IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2016 JUL -6  PM 1:39

STEPHAN HARRIS, CLERK
CASPER

---

WESTERN WATERSHEDS PROJECT;
NATIONAL PRESS PHOTOGRAPHERS
ASSOCIATION; NATURAL
RESOURCES DEFENSE COUNCIL,
INC., PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS, INC.; and
CENTER FOR FOOD SAFETY,

      Plaintiffs,

    vs.

PETER K. MICHAEL, in his official
capacity as Attorney General of Wyoming;
TODD PARFITT, in his official capacity as
Director of the Wyoming Department of
Environmental Quality; PATRICK J.
LEBRUN, in his official capacity as
County Attorney of Fremont County,
Wyoming; JOSHUA SMITH, in his official
capacity as County Attorney of Lincoln
County, Wyoming; CLAY KAINER, in his
official capacity as County and Prosecuting
Attorney of Sublette County, Wyoming,

      Defendants.

Case No.  15-CV-00169-SWS

---

## ORDER GRANTING MOTION TO DISMISS

The above-captioned matter comes before the Court on Defendants' Motion to

Dismiss Plaintiffs' Amended Complaint for failure to state a claim upon which relief may

be granted.  (ECF No. 58). For those reasons set forth below the Court finds Defendants'

Motion should be granted.

# I.   BACKGROUND

Plaintiffs Western Watersheds Project (Western Watersheds), National Press Photographers Association (NPPA), National Resource Defense Council (NRDC), People for the Ethical Treatment of Animals (PETA), and, Center for Food Safety (CFS), are interest groups aimed at protecting and advocating for animals, wildlife, and the environment. Plaintiffs initiated this action last fall, challenging the constitutionality of a pair of trespass statutes passed by the Wyoming legislature prohibiting the collection of "resource data" on "open lands" without express permission or authorization. Defendants Michael, Parfitt, and Governor Matt Mead moved to dismiss Plaintiffs' complaint, arguing, *inter alia*, it failed to state any plausible claims. After briefing and oral arguments, this Court granted in part and denied in part the motion to dismiss, noting its concern as to the validity of at least certain portions of the statutes. (Ord. on MTD, ECF No. 40). Subsequently, the Wyoming legislature amended the statutes. Plaintiffs then amended their complaint, which Defendants Michael and Parfitt now move to dismiss.

## A.   2015 Statutes

In 2015, the Wyoming legislature enacted a pair of statutes, WYO. STAT. §§ 6-3-414; 40-27-10[1] (2015), addressing "Trespass to Collect Resource Data." The statutes prohibited unauthorized entrants on "open land"[2] from collecting or recording information relating to land and land use[3] and then submitting that information to a

---

[1] The civil statute was originally codified at §40-26-101. It was recodified at § 40-27-101.
[2] "Open land" was defined as land outside the exterior boundaries of a city, town, or state-approved subdivision. WYO. STAT. § 6-3-414(d)(ii) (2015).
[3] "Resource data" was defined as "data relating to land or land use, including but not limited to data regarding agriculture, minerals, geology, history, cultural artifacts, archeology, air, water, soil, conservation, habitat,

governmental agency. One statute imposed criminal penalties including fines and possible jail time, WYO. STAT. § 6-3-414 (2015), while the other imposed civil liability for consequential and economic damages caused by the trespass, WYO. STAT. §40-27-101 (2015). One subsection of the statutes appeared to relate to *public* lands, WYO. STAT. §§ 6-3-414(a); 40-27-101(a)[4], while another subsection related to *private* lands, WYO. STAT. §§ 6-3-414(b); 40-27-101(b).[5] "Collect" was defined as "to take a sample of material, acquire, gather, photograph or otherwise preserve information in any form from open land which is submitted or intended to be submitted to any agency of the state or federal government." WYO. STAT. § 6-3-414(d)(i) (2015).

Thus, to violate the 2015 statutes, an individual would have had to: (1) enter "open land" (private or public) to collect resource data without an ownership interest, authorization, or permission to enter *or* to collect such data; (2) somehow record or

---

vegetation or animal species," excepting from the definition various information collected by governments or law enforcement. WYO. STAT. § 6-3-414(d)(iv) (2015).

[4] A person would be subjected to criminal and/or civil liability under this subsection "if he:
    (i) Enter[ed] onto open land for the purpose of collecting resource data; and
    (ii) D[id] not have:
        (A) An ownership interest in the real property or statutory, contractual or other
        legal authorization to enter or access the land to collect resource data; or
        (B) Written or verbal permission of the owner, lessee or agent of the owner to
        enter or access the land to collect the specified resource data."

WYO. STAT. §§ 6-3-414(a); 40-27-101(a) (2015).

[5] A person would be criminally and/or civilly liable under this section "if he enter[ed] onto private open land and collects resource data without:
    (i) An ownership interest in the real property or, statutory, contractual or other legal authorization
    to enter the private land to collect the specified resource data; or
    (ii) Written or verbal permission of the owner, lessee or agent of the owner to enter the land to
    collect the specified resource data."

WYO. STAT. §§ 6-3-414(b); 40-27-101(b) (2015).

preserve data about the land or land use, and; (3) intend to submit, or actually submit, such data to a governmental agency. Any information obtained in violation of the statutes could not be used in any civil, criminal, or administrative proceedings (unless it was a civil action or criminal prosecution under the statutes), and such information which had been submitted to a governmental entity had to be expunged. WYO. STAT. §§ 6-3-414(e), (f); 40-27-101(d), (e), (f) (2015).

In their original complaint, Plaintiffs argued the 2015 statutes: (1) violated the Petition Clause of the First Amendment; (2) violated the Free Speech Clause of the First Amendment; (3) were preempted by federal laws; and (4) violated the Equal Protection Clause of the Fourteenth Amendment. Defendants Peter K. Michael, Todd Parfitt, and Matthew Mead moved to dismiss Plaintiffs' claims, arguing Plaintiffs lacked standing to challenge the civil statute and failed to state a claim as to all causes of action. Additionally, the State Defendants argued Governor Matthew Mead was an improper party.

After hearing oral arguments, the Court issued a written order, wherein it held Plaintiffs: (1) had standing to challenge the civil statute; (2) stated a plausible First Amendment Free Speech and Petition claim; (3) stated a plausible Equal Protection claim; (4) failed to state a Supremacy Clause or preemption claim, and; (5) failed to state a claim against Defendant Governor Matthew Mead. The Court was primarily concerned about the statutes' application to activities on public lands, as restricting the public's activities on such lands was unrelated to deterring trespassing. Also concerning was the

4

fact that the 2015 statutes targeted the submission, or intended submission, of data to governmental agencies.

### B. 2016 Statutes

In 2016, the Wyoming legislature amended the two previously challenged statutes. As with the 2015 versions, the revised statutes are nearly identical, with one still imposing criminal punishment, WYO. STAT. § 6-3-414 (2016), and the other, civil liability, WYO. STAT. § 40-27-101 (2016). The revised statutes still define "resource data" as "data relating to land or land use, including but not limited to data regarding agriculture, minerals, geology, history, cultural artifacts, archeology, air, water, soil, conservation, habitat, vegetation or animal species," with certain exceptions for certain governmental and law enforcement matters. WYO. STAT. §§ 6-3-414 (e)(iv); 40-27-101(h)(iii) (2016).[6] The new statutes clarify they apply only to entry onto private lands (eliminating any reference to "open lands"), and no longer require data be submitted or intended to be submitted to a governmental agency. The definition of "collect" has been modified to mean "to take a sample of material, acquire, gather, photograph or otherwise preserve information in any form and the recording of a legal description or geographical coordinates of the location of the collection." WYO. STAT. §§ 6-3-414(e)(i); 40-27-101(h)(i) (2016).

The revised statutes contain three proscriptive subsections:

---

[6] The revised civil statute added a definition subsection, WYO. STAT. § 40-27-101(h) (2016). The 2015 version did not contain a definition subsection. This amendment is not consequential, however, as the Court held in its previous order that the definitions from the criminal statute, WYO. STAT. § 6-3-414(d) (2015), applied equally to the civil statute. (Ord. on Mot. to Dis., ECF No. 40, at p. 3, n. 2).

(a) A person [is guilty of trespassing/commits a civil trespass] to unlawfully collect resource data from private land if he:

> (i) Enters onto private land for the purpose of collecting resource data; and

> (ii) Does not have:
>> (A) An ownership interest in the real property or statutory, contractual or other legal authorization to enter the private land to collect the specified resource data; or

>> (B) Written or verbal permission of the owner, lessee or agent of the owner to enter the private land to collect the specified resource data.

(b) A person [is guilty/commits a civil trespass] of unlawfully collecting resource data if he enters onto private land and collects resource data from private land without:

> (i) An ownership interest in the real property or, statutory, contractual or other legal authorization to enter the private land to collect the specified resource data; or

> (ii) Written or verbal permission of the owner, lessee or agent of the owner to enter the private land to collect the specified resource data.

(c) A person [is guilty of trespassing/commits a civil trespass] to access adjacent or proximate land if he:

> (i) Crosses private land to access adjacent or proximate land where he collects resource data; and

> (ii) Does not have:
>> (A) An ownership interest in the real property or, statutory, contractual or other legal authorization to cross the private land; or

>> (B) Written or verbal permission of the owner, lessee or agent of the owner to cross the private land.

WYO. STAT. §§ 6-3-414(a)-(c); 40-27-101(a)-(c) (2016).

Thus, a person can violate the revised statutes in one of three ways: (1) if he enters private land with the purpose of collecting resource data and without authorization or permission to enter the land or specific permission to collect resource data; (2) if he enters private land and actually collects resource data without authorization or permission to enter the land or specific permission to collect resource data, or; (3) if he crosses private land without authorization or permission to do so and collects resource data.[7]

As with the 2015 versions of the statutes, an individual must have permission not only to enter private lands, but enter them for the purpose of collecting specific resource data. A first-time offender under the revised criminal statute faces imprisonment for not more than one (1) year, a fine of not more than $1,000, or both. WYO. STAT. § 6-3-414(d)(i) (2016). A repeat offender of subsections (a) or (b) of the criminal statute faces imprisonment for not less than ten (10) days, but not more than one (1) year, a fine of not more than $5,000, or both.[8] Under the civil statute, one who violates the statute is liable in a civil action by the owner or lessee of the land for all consequential and economic damages proximately caused by the trespass. WYO. STAT. § 40-27-101(d) (2016). The violator will also be liable for litigation costs, reasonable attorney fees and costs. *Id.*

The revised statutes prohibit the use of resource data collected in violation of the

---

[7] The Court refers to "authorization or permission," noting, however, the relevant statutory provisions read:
"An ownership interest in the real property or statutory, contractual or other legal authorization to enter the private land to collect the specified resource data; or
Written or verbal permission of the owner, lessee or agent of the owner to enter the private land to collect the specified resource data."
WYO. STAT. §§ 6-3-414(a)(ii)(A)-(B), (b)(i)-(ii), (c)(ii)(A)-(B); 40-27-101((a)(ii)(A)-(B), (b)(i)-(ii), (c)(ii)(A)-(B).
[8] This provision excludes a heightened punishment for repeat offenders under subsection (c) of the statute, wherein a person is guilty of crossing private property without authorization to collect resource data on adjacent lands.

statutes in any civil, criminal, or administrative proceeding, other than to prosecute a

person under either statute. WYO. STAT. §§ 6-3-414(f); 40-27-101(f) (2016). Also, any

data in possession of any Wyoming governmental entity which was collected in violation

of the statutes must be expunged by the entity. WYO. STAT. §§ 6-3-414(g); 40-27-101(g)

(2016).

### C. Amended Complaint

On April 11, 2016, Plaintiffs amended their complaint, arguing even as revised,

the statutes are unconstitutional as applied to them, as well as on their face. (Amend.

Compl. ECF No. 54). Plaintiffs' amended complaint presents two constitutional causes of

action: Free Speech and Equal Protection.

#### i.     Free Speech

Plaintiffs assert the revised statutes infringe upon their First Amendment rights

and are "unconstitutional on their face and as applied to Plaintiffs' collection of resource

data" as well "as applied to a host of other activities." (*Id.* at ¶ 90).

Plaintiffs provide numerous examples of desired data-collection activities that

they, their members, and other "whistleblowers" and "citizen scientists," have refrained

from engaging in out of fear of criminal prosecution or civil liability under the revised

statutes. Plaintiffs assert "it is difficult to determine whether a road that appears open to

the public, and which the pubic routinely makes use of, crosses private land, and if it does

so, whether a public right of way exists over that road." (*Id.* at ¶ 81). Plaintiffs and their

members argue they are chilled from engaging in their data collection activities, even on

public lands, out of fear of unintentionally stepping onto private lands, or using a road

which "unbeknownst to Plaintiffs or their staff, crosses private land across which there exists no public right of way." (*Id.* at ¶ 82). Western Watersheds asserts "the fact that the boundary between public and private lands is often entirely unmarked in Wyoming has compelled [it] to suspend such activities." (*Id.* at ¶ 82(b)). Plaintiffs also assert they are chilled because it is uncertain who must grant them permission when land has multiple owners with different ownership interests. (*Id.* at ¶ 82(d)).

Plaintiffs argue the statutes are content and viewpoint based and discriminate against speech (or the creation of speech) which is critical of land use with no legitimate state interest or justification for doing so. They assert the laws are content-based because they only seek to punish the collection of certain types of information, i.e., resource data. Plaintiffs also argue the statutes are viewpoint-based, as they "effectively grant the landowner, lessee, or landowner's agent the power to authorize or prohibit who can gather information about land and land use for communication to the public or government." (*Id.* at ¶ 88).

Plaintiffs also argue the statutes are unconstitutionally overbroad, lacking "any plainly legitimate sweep." (*Id.* at ¶ 90 (quoting *United States v. Stevens*, 559 U.S. 460, 472 (2010))). Plaintiffs provide three examples to support their overbreadth argument: a child taking a picture with her cellphone on her neighbor's property, which she has permission to be upon; a traveler, who enters private land in response to a cry for help, discovers a fire, and records the location using GPS on her phone, and; the hiker who records and reports illegal activities occurring on private property. (*Id.* at ¶ 91). They claim any person who takes a picture with his cell phone after entering or crossing private

9

land, knowingly or inadvertently, without express permission to do so, would be liable and subject to criminal charges.

Finally, Plaintiffs assert the statute prohibit governmental agencies from using and considering truthful information. (*Id.* at ¶¶ 95-96). They claim because the statutes still contain an expungement provision, even if a person is willing to risk criminal prosecution or civil liability and violate the statutes in order to provide data to governmental agencies, the agency is still precluded from considering it.

### ii.    *Equal Protection*

Plaintiffs assert the revised statutes violate their Equal Protection rights by distinguishing between the purposes and intent of entrants on private property, punishing only those seeking to collect resource data. (*Id.* at ¶ 114). They also argue the statutes violate their Equal protection rights by burdening the fundamental right of freedom of speech without serving any legitimate government interest. (*Id.* at ¶¶ 115-16). Finally, Plaintiffs maintain the statutes violate their Equal Protection rights because they were promulgated out of animus. They argue the statutes are aimed at chilling the efforts of those persons who disapprove of various land-uses and gather and communicate information to governmental agencies to further the implementation of environmental laws. (*Id.* at ¶ 118).

### D. Motion to Dismiss

Defendants Peter Michael and Todd Parfitt (State Defendants) now move to dismiss the Amended Complaint, asserting Plaintiffs fail to state either a First Amendment Free Speech or Fourteenth Amendment Equal Protection claim. (Mot. to.

Dismiss, ECF No. 58). State Defendants assert the revised statutes do not regulate protected expressive activity and therefore do not trigger the First Amendment. Alternatively, State Defendants argue even if the Court were to find the statutes regulated protected activity, the statutes only implicate private lands, upon which Plaintiffs have no right to exercise expressive activities. State Defendants assert to the extent the Court finds the statutes *do* implicate lands other than private lands, an evaluation of the constitutionality of the statutes as applied to such lands is impossible to consider in the abstract.

State Defendants assert Plaintiffs fail to state an Equal Protections claim, as the revised statutes do not target a suspect class or burden a fundamental right, and can survive rational basis scrutiny. Additionally, they argue the statutes were not promulgated out of animus, or alternatively, that any animus related to the 2015 statutes has been cured.

## I.    STANDARD OF REVIEW

Faced with a motion to dismiss a claim under F.R.C.P. 12(b)(6), the Court accepts as true all well-pleaded facts in the complaint, and draws all reasonable inferences therefrom in the light most favorable to the plaintiffs. *Leverington v. City of Colorado Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (citation omitted). The Court disregards any conclusory statements or conclusions of law. *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn*, 656 F.3d at 1215.

## II.   DISCUSSION

### A. First Amendment

The threshold question in a First Amendment Free Speech analysis is to ask whether the challenged governmental action regulates protected activity: if not, the Court "need go no further." *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 797 (1985). Here, Plaintiffs assert that because the revised statutes restrict their ability to "create" speech, i.e., gather data, the statutes regulate protected activity and are subject to at least some level of scrutiny. The Supreme Court has recognized "creation and dissemination of speech" may be "speech" within the meaning of the First Amendment. *Sorrell v. IMS Health Inc.*, 131 S.Ct. 2653, 2667 (2011). Even so, it has refused recognize *all* "creation" of speech as protected expressive activity for purposes of the First Amendment. *See, Houchins v. KQED, Inc.*, 438 U.S. 1, 11 (1978) (holding plaintiffs did not have First Amendment right to unrestricted access to prisoners, noting the right to gather news does not compel private persons or governments to supply such information); *Zemel v. Rusk*, 381 U.S. 1, 16-17 (1965) (holding a First Amendment right was not involved based upon a travel ban which restricted the plaintiff's ability to visit Cuba and collect information, noting "[t]here are few restrictions on action which could not be clothed by ingenious argument in the garb of decreased data flow."). The court does not view "creation" of speech in a vacuum; the right to "create" speech via access to

information is protected activity only if conducted "by means within the law." *Branzburg v. Hayes*, 408 U.S. 665, 681-82 (1972).[9]

In this case, Plaintiffs challenge the statutes based upon their restriction of creation of speech by illegal means. Plaintiffs' First Amendment right to create speech does not carry with it an exemption from other principles of law, or the legal rights of others. Plaintiffs' desire to access certain information, no matter how important or sacrosanct they believe the information to be, does not compel a private landowner to yield his property rights and right to privacy.

Plaintiffs' asserted inability to determine their location and land ownership during data collection creates somewhat of a conundrum. The Amended Complaint presents an exhaustive list of data collection activities they have engaged in in the past, and have recently refrained from engaging in. (Amend. Compl. ECF No. 54, at ¶¶ 19-53, 79-83). These activities involve collecting water samples, recording locations of purported environmental or permitting violations, photographing and recording the location of wildlife, monitoring air-quality near oil and gas developments and recording locations of violations, etc. Each of these activities involves Plaintiffs and their members determining and recording the locations (by GPS or other means) of purported environmental violations or data findings. The ability to pinpoint and record the location of alleged environmental violations is essential to Plaintiffs' mission and goals. Coincidentally, the

---

[9] Plaintiffs gain no support from *Sorrell*, as that case did not involve obtaining the information through illegal means. 131 S.Ct. 2653. The provider of information was aware, and willing. In this case, private landowners may grant permission, but until such permission or authorization is obtained, they are not a willing provider of the information Plaintiffs' seek.

same information would be essential to a successful prosecution or civil action brought under these statutes.

To say Plaintiffs are incapable of utilizing the same GPS tools, methods, and research to determine their own location during, and en route to, such data collection activities is borderline disingenuous. Plaintiffs acknowledge they have had to conduct surveys in the past to determine boundaries or rights-of-way. (Amend. Compl. ECF No. 54, at ¶ 13). To the extent the government does not have, or is uncertain of, public right-of-ways on particular routes or roads, it has the ability to clarify and obtain such rights.[10] In any event, any perceived burden or hardship associated with determining property rights does not translate into a First Amendment right to go upon lands, blissfully ignorant of their ownership.

The lack of public First Amendment rights upon private property is not new or novel. The Supreme Court has repeatedly cognized the *absence* of a First Amendment right to engage in speech on the private property of another. *See e.g., Lloyd Corp., LTD. v. Tanner*, 407 U.S. 551, 567-68 (holding First Amendment did not require a private corporation to allow handbill distribution on its private property); *Hudgens v. NLRB*, 424 U.S. 507, 509 (1976) (holding employer was not required to permit workers to picket on company property); *Cornelius*, 473 U.S. at 801 ("[A] speaker must seek access to public property or to private property dedicated to public use to evoke First Amendment

---

[10] This logic applies equally to Plaintiffs' argument that they are uncertain whose authorization or permission they are required to obtain to collect resource data on private lands. It is not uncommon for multiple individuals to have property interests in a parcel of land. A real property interest holder cannot convey a greater interest than he owns. To the extent Plaintiffs or others seek to engage in an activity upon a parcel of land, they must determine who holds what rights in order to have adequate authorization.

14

concerns . . . ."). Contrary to Plaintiffs' assertion, the fact the state promulgated the restriction in this instance, as opposed to the private landowners in *Lloyd* or *Hudgens*, is of no consequence. The source of the restriction does not change the fact a person has no First Amendment right to engage in speech on the private property of another. The statutes leave it to the private landowner whether to grant permission to others to collect resource data upon his land.[11] To the extent such permission or authorization is granted, the state imposes no restriction.

In short, there is no First Amendment right to trespass upon private property for the purpose of collecting resource data. This does not end the Court's analysis, however. As noted above, the revised statutes contain three proscriptive subsections, two of which apply strictly to collection of resource data on private lands. *See* WYO. STAT. §§ 6-3-414(a), (b); 40-27-101(a), (b). These subsections, therefore, do not warrant any further First Amendment analysis. The third subsection, however, arguably involves collection of resource data from public lands, or lands upon which an individual may rightfully engage in resource data collection. WYO. STAT. §§ 6-3-414(c); 40-27-101(c). Even so, to subject this subsection of the statutes to First Amendment scrutiny is premature.

To say a regulation restricts activity presupposes that one has the right to engage in such activity in a particular manner. Certainly Plaintiffs and other members of the

---

[11] Plaintiffs cite *Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Village of Stratton*, 536 U.S. 150, 160 (2002) to support their position that the Supreme Court has applied First Amendment analysis to regulations of the public's right to engage in speech on private property. That case is distinguishable, however, as it dealt with door-to-door canvassing and pamphletting of religious materials. The Supreme Court has found hand distribution of religious literature to occupy "the same high estate under the First Amendment as [ ] worship in the churches and preaching from the pulpits." *Murdock v. Pennsylvania*, 319 U.S. 105, 108-09 (1943). No such elevated protection has been afforded collection of "resource data."

public are entitled to be upon public lands for various purposes, some arguably including

"collecting resource data." However, the public does *not* have the right to cross private

lands (trespass) to engage in such activities. The Supreme Court "has never held that a

trespasser or uninvited guest may exercise general rights of free speech on property

privately owned and used nondiscriminatorily for private purposes only." *Lloyd*, 407 U.S.

at 568. Likewise, it has never held a trespasser has the right to cross private property to

engage in such activities. The revised statutes do nothing to the legal rights of members

of the public; they only emphasize and increase punishment for the unlawful entry of

private lands en route to engage in protected activity. This "restriction" is already in place

by virtue of principles of real property ownership and existing concepts of trespass. The

statutes are not "time, place, or manner" restrictions as that term is contemplated by First

Amendment precedent. Therefore, the Court need not engage in further scrutiny of

subsection (c), as it does not "restrict" or "regulate" a protected First Amendment activity

as contemplated by the line of Free Speech precedent addressing "time, place, and

manner" restrictions.

Plaintiffs' Amended Complaint also asserts a facial overbreadth First Amendment

challenge. To assert a facial overbreadth claim, a plaintiff must demonstrate that the

challenged law (1) "could never be applied in a valid manner," or (2) that even though it

may be validly applied to some, "it nevertheless is so broad that it may inhibit the

constitutionally protected speech of third parties." *N.Y. State Club Ass'n, Inc. v. City of

New York*, 487 U.S. 1, 11 (1988) (citations omitted). Plaintiffs' overbreadth challenge

appears to fall under the latter category, providing the three above-mentioned examples

of third parties who would be liable under the statutes, notwithstanding the apparent innocence or justification of their activities.

"The 'mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.'" *United States v. Williams*, 553 U.S. 285, 301 (2008) (quoting *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984)). The court must find "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *N.Y. State Club Ass'n, Inc.*, 487 U.S. at 11 (citation omitted). The claimant bears the burden of demonstrating the law's application to protected speech is substantially overbroad, not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications. *Virginia v. Hicks*, 539 U.S. 113, 119-120 (2003) (citations omitted). The overbreadth doctrine is "strong medicine," used "sparingly" and applied only as "a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). Such medicine is not warranted in this case.

When a statute is aimed at regulating conduct—as opposed to "pure speech"—the court's overbreadth inquiry must account for the state's legitimate interest in enforcing its "otherwise valid criminal law." *Id.* at 615. A statute regulating conduct, "if too broadly worded, may deter protected speech to some unknown extent." *Id.* Even so, "there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe." *Id.* "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically

17

addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

Here, the revised statutes are aimed at regulating the conduct of trespass by imposing the burden upon an entrant to know the ownership interests of the land he enters or crosses. Plaintiffs' three examples are predictions at best, which do not justify invalidating the statutes on their face. As to Plaintiffs' first example, logically a neighbor who permits a child to enter his property would also permit the child to take a picture. To the extent the neighbor does not wish to grant the child permission to take pictures, that is his prerogative. A basic concept of property law taught to first year law students is that property rights are like a bundle of sticks and can be divided in terms of dimension, duration, and scope. If a landowner wishes to grant access or use of his property for a limited purpose, he has every right to do so. As noted by the Supreme Court in *PruneYard Shopping Center v. Robins*, one of the essential sticks in the bundle of property rights is the right to exclude others. 447 U.S. 74, 82 (1980) (citing *Kaiser Aetna v. United States*, 444 U.S. 164, 179-80 (1979)).

As to Plaintiffs' second and third examples, nothing indicates a reasonable person would refrain from reporting an emergency or illegal activity by virtue of the new statutes. In fact, as noted by State Defendants in their Reply Brief (ECF No. 63, at n. 4), either of the individuals in Plaintiffs' second and third examples could report their findings without violating the revised statutes. The definition of "collect" is "to take a sample of material, acquire, gather, photograph or otherwise preserve information in any form and the recording of a legal description or geographical coordinates of the location

18

of the collection." WYO. STAT. §§ 6-3-414(e)(i); 40-27-101(h)(i) (2016). Simply calling emergency personnel, or verbally reporting findings to law enforcement, even providing geographical coordinates, would not violate the revised statutes.

When interpreting statutory language, the court relies upon the principle of *noscitur a sociis*—a word is known by the company it keeps—to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words. *Yates v. United States*, 135 S.Ct. 1074, 1085 (2015). Under the canon *ejusdem generis*, "[w]here general words follow specific words in a statutory enumeration, the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Washington State Dept. of Social and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384 (2003) (citations omitted).

In this instance, the general phrase "otherwise preserve information" must be read in connection with the specific preceding words. The specific verbs used in the definition of "collect" require some form of physical or tangible recording. Making a mental note is not similar enough to be encompassed by "otherwise preserve." Therefore, merely reporting what one witnessed is not prohibited by the revised statutes. This interpretation of the statutes likewise weakens any argument that the statutes completely preclude whistleblowers from reporting what they witness or find based upon memory.[12]

---

[12] Plaintiffs assert the creation of an audiovisual recording is protected speech, citing *Animal Legal Defense Fund v. Otter*, 118 F. Supp. 3d 1195, 1205 (D. Idaho 2015) (*ALDF II*) (finding the restriction of audiovisual recording in agricultural facilities to be an impermissible restriction on speech of whistleblowers). The Court respectfully disagrees. There is no precedent to support the premise that whistleblowers somehow have an elevated First Amendment right to make audiovisual recordings on private property without permission. No matter how virtuous or important one may view a whistleblower's motives or actions, the ends do not justify the means of trespass.

In sum, Plaintiffs fall far short of demonstrating a realistic danger of a substantial suppression of speech. Even more importantly, the fact the statutes are aimed at conduct, rather than speech itself, the Court cannot, with confidence, justify invalidating the statute on their face, prohibiting the State of Wyoming from enforcing the statute against conduct (i.e., trespassing) which it is entitled to proscribe. *Broadrick*, 413 U.S. at 615.

Plaintiffs' assert the revised statutes expungement provisions (WYO. STAT. §§ 6-3-414(g); 40-27-101(g)), violate the First Amendment because they prevent agencies from considering truthful and accurate information. The Supreme Court has repeatedly refused to define what protections should be afforded the publication of truthful information. *Bartnicki v. Vopper*, 532 U.S. 514, 529 (2001). The Supreme Court's practice has been to only analyze restrictions of the publication of truthful information on a case-by-case "as-applied" basis. *See, e.g., id.*; *Landmark Comm., Inc. v. Virginia*, 435 U.S. 829, 838 (1978); *Florida Star v. B.J.F.*, 491 U.S. 524, 532-33 (1989). Because this Court is not faced with an "as-applied" challenge to the expungement provisions of the revised statutes, it will follow the Supreme Court's lead and declines to engage in further First Amendment analysis.

In conclusion, the revised statutes do not regulate protected First Amendment activity and therefore are not subject to further scrutiny. There is no constitutionally protected First Amendment right to enter upon the private lands of another for the purposes of collecting data. Plaintiffs fail to demonstrate the statutes are facially overbroad. The Court, following Supreme Court precedent, declines to conduct a facial analysis of the statutes' expungement provisions. Therefore, Plaintiffs cannot maintain a

Free Speech First Amendment challenge and State Defendants' motion to dismiss must be granted.

### B. Equal Protection

Plaintiffs assert the revised statutes violate the Equal Protection Clause by: (1) targeting persons entering open land seeking to collect resource data rather than entering land for other purposes; (2) burdening a fundamental right without serving a legitimate government interest, and; (3) also because they were promulgated out of animus.

The Equal Protection Clause of the Fourteenth Amendment states "No State shall . . . deny any person within its jurisdiction the equal protection of the laws." U.S. CONST., amend. 14, sec. 1. "The Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans*, 517 U.S. 620, 631 (1996) (citations omitted). Unless a classification burdens a fundamental right or "proceed[s] along suspect lines," it is presumptively valid, subject only to rational basis scrutiny. *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993). A classification is not impermissible simply because it "is not made with mathematical nicety or because in practice it results in some inequality." *Romer*, 517 U.S. at 631 (citations omitted). Under the rational basis test, a legislative classification will be upheld if it "advance[s] a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *Id.* at 632. The law must be "narrow enough in scope and grounded

in a sufficient factual context" for the court "to ascertain some relation between the classification and the purpose served." *Id.* at 632-33.

If the law burdens a fundamental right or targets a suspect class, however, it is subject to strict scrutiny. *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313 n. 3 (1976). Strict scrutiny requires laws to be suitably tailored to serve a compelling state interest. *Reno v. Flores*, 507 U.S. 292, 302 (1993). Free speech is a recognized fundamental right, which, in part, Plaintiffs base their Equal Protection challenge upon. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 336, n. 1 (1995).

The revised statutes "classify" entrants of private property based upon the actual or intended conduct the entrant engages in. As noted above, subsections (a) and (b) of the statutes clearly do not involve a First Amendment right, and therefore do not burden Plaintiffs' fundamental right of Free Speech. Similarly, subsection (c) (relating to crossing of private land to collect resource data on adjacent lands) does not "burden" Plaintiffs' First Amendment rights as that word is intended by the Supreme Court. Therefore, the revised statutes are not subject to strict scrutiny by virtue of the rights burdened.

The Court does not find the statutes were promulgated out of animus toward Plaintiffs' groups or members. First, although some comments during the legislative session for the 2015 versions of WYO. STAT. §§ 6-3-414 and 40-27-101 expressed frustrations or outright dislike for environmental groups, or other particular interest groups or viewpoints, such comments cannot be said to taint the motivations of all legislators. "What motivates one legislator to make a speech about a statute is not

necessarily what motivates scores of others to enact it, and the stakes are sufficient high for [the court] to eschew guesswork." *United States v. O'Brien*, 391 U.S. 367, 383-84 (1968). Additionally, these comments were made during the promulgation of the 2015 versions of the statutes. In any event, legislatures may "cure" a law originally enacted with unconstitutional animus. *See e.g., Hayden v. Paterson*, 594 F.3d 150, 162-69 (2d Cir. 2010); *Johnson v. Governor of Fla.*, 405 F.3d 1214, 1223 (11th Cir. 2005) (en banc), *cert. denied*, 546 U.S. 1015 (2005) ("Florida's felon disenfranchisement provision is constitutional because it was substantively altered and reenacted in 1968 in the absence of any evidence of racial bias.").

As noted in this Court's prior order, the Supreme Court has held when a law purports to protect an interest already protected by existing law, courts have reason to be suspicious of the legislature's actual intent. *U.S. Dept. of Agriculture v. Moreno*, 413 U.S. 528, 536-37 (1973). Upon further review of Wyoming's trespass laws, as well as taking into consideration the amendments to the statutes (removing its application to public lands), the Court no longer has "considerable doubt" as to the purposes of the revised statutes. As clarified by State Defendants in the latest Motion to Dismiss, the revised statutes are distinguishable from Wyoming's preexisting criminal trespass statute and common law trespass. Although the statutes may aim to prevent trespassing, they operate in a different manner than existing law, and seek to provide a more effective deterrent to protect private property rights. To violate Wyoming's existing criminal trespass statute, WYO. STAT. §6-3-303, an entrant must enter or remain on the land of another, with knowledge that he has no right to do so, or after being notified to leave or not trespass.

23

Notice can be given through personal communication or postage of signs. Constituents raised the issue to legislators that individuals seeking to collect resource data were trespassing upon their private lands, but could not be charged under the existing criminal statutes. In other words, the existing criminal trespass statutes were not adequate deterrents for these trespassers. "If the sanctions that presently attach to a violation [of a law] do not provide sufficient deterrence, perhaps those sanctions should be made more severe." *Bartnicki v. Vopper*, 532 US. 514, 529 (2001). That is what the Wyoming Legislature has done in this case.

This is not the first time Wyoming has enacted a statute to prevent a particular problematic sort of trespass. Wyoming's anti-trespass hunting statute provides, "[n]o person shall enter upon the private property of any person to hunt, fish, or trap without permission of the owner or person in charge of the property." WYO. STAT. § 23-3-305(b). Similar to Plaintiffs and their members,

> Hunters may unintentionally stray off public lands onto private lands. Anglers, due to a lack of skill in reading maps or GPS units, may think they are on public land but soon find they are not when a rancher confronts them in a field. Regardless of intent, there are only two elements that must be shown in a violation of this statute—that the hunter, angler or trapper was on the private land in question without permission and that he was hunting, fishing or trapping.

Bruce Scigliano, *Trespass to Hunt, Fish or Trap: An Example of a Strict Liability Law*, WYO. LAWYER, June 2016.  While Plaintiffs may disagree that their trespassing is problematic, that is a policy choice the Wyoming Legislature has made.

Although the Court expressed concerns with the 2015 versions of the statutes, those concerns have been resolved by the recent amendments. First, the revised statutes

eliminate any reference to "open lands," which the Court found imposed liability for conduct engaged in while completely on public lands. Secondly, the revised statutes eliminate any requirement that the data be submitted or intended to be submitted to a governmental agency. As revised, the statutes are aimed completely at deterring trespassing. The instant case is distinguishable from *Moreno*, as the targeted individuals by the amendment to the statute in that case would not be further deterred. 413 U.S. at 536-37. In that case, there was no evidence the existing provisions in the statute, purportedly aimed at preventing the same abuses, were inadequate. Here, there is strong evidence, based upon Plaintiffs' own admissions, that existing trespass laws do not deter them from entering private lands to collect data or to access other lands to collect data. Therefore, the Court finds the "doubt" which plagued the amendment in *Moreno* does not plague the revised statutes in this case. Finally, unlike in *Animal Defense Fund v. Otter*, 118 F. Supp. 3d 1195 (D. Idaho, Aug. 3, 2015), Wyoming's revised statutes preclude trespassing to collect any resource data, regardless of whether that data is favorable or unfavorable to the owner.

The revised statutes were not promulgated out of animus toward a particular group, and do not burden a fundamental right. Therefore, the statutes must rationally further some legitimate governmental interest. *Romer*, 517 U.S. at 632. As previously noted, protecting private property rights is a legitimate government interest. Current trespass statutes were not adequately deterring those, such as Plaintiffs, seeking to collect resource data, from entering or crossing (trespassing upon) private property. Under the revised statutes, those wishing to collect resource data are charged with knowing where

25

they are while engaging in data collection. Thus, the statutes rationally relate to the interest of protecting private property rights. The statutes pass the rational basis test and therefore do not violate the Equal Protections Clause of the Fourteenth Amendment. Accordingly, Plaintiffs' second cause of action must also be dismissed.

## III.   CONCLUSION

Plaintiffs' claims are erroneously premised upon their perceived First Amendment right to trespass upon private property to collect resource data. No such constitutional right exists. To the contrary, the United States Supreme Court "has never held that a trespasser or an uninvited guest may exercise general rights of free speech on property privately owned." *Lloyd Corp., Limited, supra* at 568. The ends, no matter how critical or important to a public concern, do not justify the means, violating private property rights. Accordingly, Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted. Therefore, Defendants' Motion to Dismiss is hereby GRANTED.

Dated this 6 day of July, 2016.

Scott W. Skavdahl
United States District Judge