**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**September 7, 2017**

# UNITED STATES COURT OF APPEALS

**Elisabeth A. Shumaker**
**Clerk of Court**

## FOR THE TENTH CIRCUIT

_____

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT; NATIONAL PRESS PHOTOGRAPHERS ASSOCIATION; NATURAL RESOURCE DEFENSE COUNCIL,<br><br>    Plaintiffs - Appellants,<br><br>and<br><br>PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS INC; CENTER FOR FOOD SAFETY,<br><br>    Plaintiffs,<br><br>v.<br><br>PETER K. MICHAEL, in his official capacity as Attorney General of Wyoming; TODD PARFITT, in his official capacity as Director of the Wyoming Department of Environmental Quality; PATRICK JON LEBRUN, Esq., in his official capacity as County Attorney of Fremont County, Wyoming; JOSHUA SMITH, in his official capacity as County Attorney of Lincoln County, Wyoming; CLAY KAINER, in his official capacity as County and Prosecuting Attorney of Sublette County, Wyoming,<br><br>    Defendants - Appellees,<br><br>and<br><br>CENTER FOR AGRICULTURE AND | No. 16-8083 |

FOOD SYSTEMS; FIRST AMENDMENT
LEGAL SCHOLARS,

    Amici Curiae.

_____

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 2:15-CV-00169-SWS)**

_____

David S. Muraskin, Public Justice, P.C., Washington, D.C. (Leslie A. Brueckner, Public Justice, P.C., Oakland, California, Justin Marceau, University of Denver Sturm College of Law, Denver, Colorado, Deepak Gupta, Gupta Wessler, PLLC, Washington, D.C., Michael E. Wall, San Francisco, California, Margaret Hsieh, Natural Resources Defense Council, New York, New York, and Reed Zars, Laramie, Wyoming, with him on the briefs), for Plaintiffs-Appellants.

Erik E. Petersen (James Kaste, with him on the brief), Office of the Attorney General for the State of Wyoming, Cheyenne, Wyoming, for Peter K. Michael and Todd Parfitt, Defendants-Appellees.

Matt Gaffney, Chief Deputy Sublette County and Prosecuting Attorney, Pinedale, Wyoming, filed a brief for Clay Kainer, Defendant-Appellee.

Richard Rideout, Law Office of Richard Rideout, PC, Cheyenne, Wyoming, filed a brief for Joshua Smith and Patrick Jon LeBrun, Defendants-Appellees.

Carrie Ann Scrufari, Center for Agriculture and Food Systems, Vermont Law School, South Royalton, Vermont, filed an Amicus Curiae brief for Center for Agriculture and Food Systems.

Alan K. Chen, University of Denver Sturm College of Law, Denver, Colorado, and Edward T. Ramey, Tierney Lawrence, LLC, Denver, Colorado, filed an Amicus Curiae brief for First Amendment Legal Scholars.

_____

Before **LUCERO**, **McKAY**, and **HARTZ**, Circuit Judges.

_____

**LUCERO**, Circuit Judge.

_____

2

In addition to its generally applicable law of trespass, the State of Wyoming has enacted a pair of statutes imposing civil and criminal liability upon any person who "[c]rosses private land to access adjacent or proximate land where he collects resource data." Wyo. Stat. §§ 6-3-414(c); 40-27-101(c). In light of the broad definitions provided in the statutes, the phrase "collects resource data" includes numerous activities on public lands, such as writing notes on habitat conditions, photographing wildlife, or taking water samples, so long as an individual also records the location from which the data was collected. See §§ 6-3-414(e)(i), (iv); 40-27-101(h)(i), (iii).

We conclude that the statutes regulate protected speech under the First Amendment and that they are not shielded from constitutional scrutiny merely because they touch upon access to private property. Although trespassing does not enjoy First Amendment protection, the statutes at issue target the "creation" of speech by imposing heightened penalties on those who collect resource data. See Sorrell v. IMS Health Inc., 564 U.S. 552, 570 (2011). Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand.

# I

Wyoming has long prohibited trespass as a matter of both criminal and civil law. See Wyo. Stat. § 6-3-303 (criminal trespass); Edgcomb v. Lower Valley Power & Light, Inc., 922 P.2d 850, 859 (Wyo. 1996) (civil trespass). Criminal trespass occurs when an individual enters or remains on the property of another with knowledge or subsequent notification that he is not authorized to do so. § 6-3-303(a).

One convicted of criminal trespass is subject to not more than six months' imprisonment and a $750 fine. § 6-3-303(b). For civil trespass, Wyoming generally follows the Restatement (Second) of Torts. See, e.g., Goforth v. Fifield, 352 P.3d 242, 249 (Wyo. 2015); Edgcomb, 922 P.2d at 859; Thunder Hawk ex rel. Jensen v. Union Pac. R. Co., 844 P.2d 1045, 1049 (Wyo. 1992).

In 2015, Wyoming enacted a pair of statutes that prohibited individuals from entering "open land for the purpose of collecting resource data" without permission from the owner. Wyo. Stat. §§ 6-3-414 (2015); 40-27-101 (2015). The statutes were largely identical, with one imposing criminal punishment, § 6-3-414(c) (2015), and the other imposing civil liability, § 40-27-101(c) (2015). "Resource data" was defined as "data relating to land or land use," including that related to "air, water, soil, conservation, habitat, vegetation or animal species." § 6-3-414(d)(iv) (2015). And the term "collect" was defined as requiring two elements: (1) taking a "sample of material" or a "photograph," or "otherwise preserv[ing] information in any form" that is (2) "submitted or intended to be submitted to any agency of the state or federal government." § 6-3-414(d)(i) (2015).[1] Information obtained in violation of these provisions could not be used in any proceeding other than an action under the statutes themselves. §§ 6-3-414(e) (2015); 40-27-101(d) (2015). The statutes also required government agencies to expunge data collected in violation of their provisions and

---

[1] In the 2015 version of the laws, these definitions appeared only in the criminal statute. However, the parties and the district court agreed that the definitions applied to both statutes.

4

forbade the agencies from considering such data "in determining any agency action." §§ 6-3-414(f) (2015); 40-27-101(f) (2015).

The 2015 criminal statute imposed heightened penalties above and beyond Wyoming's general trespass provision. It provided a maximum term of imprisonment of one year and a $1,000 fine for first time offenders. § 6-3-414(c)(i) (2015). Repeat offenders faced a mandatory minimum ten days' imprisonment, a maximum of one year, and a $5,000 fine. § 6-3-414(c)(ii) (2015). The 2015 civil statute imposed liability for proximate damages and "litigation costs," including attorneys' fees. § 40-27-101(c) (2015).

Plaintiffs, who are advocacy organizations, filed suit to challenge the 2015 statutes. They argued that the statutes violated the Free Speech and Petition Clauses of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and were preempted by federal law. Defendants moved to dismiss. Granting the motion in part and denying it in part, the district court held that plaintiffs had stated plausible free speech, petition, and equal protection claims, but failed to state a preemption claim.

After the district court's decision, Wyoming amended the two statutes. Wyo. Stat. §§ 6-3-414 (2016); 40-27-101 (2016).[2] The revised statutes continue to impose heightened criminal punishment, § 6-3-414, and civil liability, § 40-27-101. But the amendments eliminate reference to "open lands" and instead penalize any individual who without authorization: (1) enters private land "for the purpose of collecting

---

[2] All citations, infra, refer to the 2016 revised statutes.

5

resource data"; (2) enters private land and "collects resource data"; or (3) "crosses private land to access adjacent or proximate land where he collects resource data." §§ 6-3-414(a)-(c); 40-27-101(a)-(c). Under the current version of the statutes, there is no requirement that resource data be submitted to, or intended to be submitted, to a government agency. Instead, the term "collect" now means: (1) "to take a sample of material" or "acquire, gather, photograph or otherwise preserve information in any form"; and (2) "recording . . . a legal description or geographical coordinates of the location of the collection." §§ 6-3-414(e)(i); 40-27-101(h)(i).

Plaintiffs amended their complaint to challenge the 2016 statutes, re-alleging free speech and equal protection claims. Defendants again moved to dismiss. This time, the district court granted the motion in full. It concluded that the revised version of the statutes did not implicate protected speech. Plaintiffs timely appealed.[3]

## II

We review de novo the district court's grant of a motion to dismiss under Fed. R. of Civ. P. 12(b)(6). Leverington v. City of Colo. Springs, 643 F.3d 719, 723 (10th Cir. 2011). In doing so, we "assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs." Id. (quotation omitted).

---

[3] Only three of the original five plaintiffs—the Western Watersheds Project, the National Press Photographers Association, and the Natural Resource Defense Council—appealed. For ease of reference, we refer to those three as "plaintiffs" throughout.

On appeal, plaintiffs challenge only the district court's ruling regarding subsections (c) of the statutes under the Free Speech Clause of the First Amendment. Those provisions state:

> (c) A person [is guilty of trespassing/commits a civil trespass] to access adjacent or proximate land if he:
> (i) Crosses private land to access adjacent or proximate land where he collects resource data; and
> (ii) Does not have:
> (A) An ownership interest in the real property or, statutory, contractual or other legal authorization to cross the private land; or
> (B) Written or verbal permission of the owner, lessee or agent of the owner to cross the private land.

§§ 6-3-414(c); 40-27-101(c).

## A

In granting defendants' motion to dismiss, the district court concluded that the statutes do not regulate protected First Amendment activity. See Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 797 (1985) (if the regulated activity is not speech protected by the First Amendment, a court "need go no further"). It relied on Supreme Court precedent holding that individuals generally do not have a First Amendment right to engage in speech on the private property of others. See Hudgens v. NLRB, 424 U.S. 507, 520-21 (1976) (holding picketers "did not have a First Amendment right to enter [a privately owned] shopping center for the purpose of advertising their strike"); Lloyd Corp., Ltd. v. Tanner, 407 U.S. 551, 568 (1972) (noting the "Court has never held that a trespasser or an uninvited guest

may exercise general rights of free speech on property privately owned and used nondiscriminatorily for private purposes only").

Although subsections (a) and (b) of the statutes govern actions on private property, the district court was mistaken in focusing on these cases with respect to subsections (c). Under a plain text reading, those subsections regulate activity on public property. Provided that such land is adjacent or proximate to private property, subsections (c) apply to the collection of resource data on public land. §§ 6-3-414(c); 40-27-101(c). This reading is supported by the fact that subsections (b) already penalize unauthorized individuals who collect resource data on private land. §§ 6-3-414(b); 40-27-101(b); see Rodriguez v. Casey, 50 P.3d 323, 327 (Wyo. 2002) ("Each word of a statute is to be afforded meaning, with none rendered superfluous."). In challenging subsections (c), plaintiffs do not assert a right to engage in activity on private land, as was the case in Hudgens and Lloyd Corp. Instead, they claim that subsections (c) prohibit them from engaging in protected speech that would be otherwise permissible on public property.

Defendants counter that the statutes regulate conduct on public land only if an individual first trespasses on private land. They characterize plaintiffs' argument as asserting a right to trespass. That framing misstates the issue. In considering a statute, we must view it in context and in light of related statutes. See United States v. Ko, 739 F.3d 558, 560 (10th Cir. 2014). Wyoming already prohibits trespass in general, albeit with lesser penalties than provided for in the statutes at issue. See § 6-

8

3-303.[4] Thus, the effect of the challenged provisions is to increase a pre-existing penalty for trespassing if an individual subsequently collects resource data from public land. Plaintiffs challenge this differential treatment. To determine if such provisions are subject to scrutiny under the First Amendment, the question is not whether trespassing is protected conduct, but whether the act of collecting resource data on public lands qualifies as protected speech. See Minneapolis Star & Tribune Co. v. Minn. Com'r of Revenue, 460 U.S. 575, 592 (1983) ("We have long recognized that even regulations aimed at proper governmental concerns can restrict unduly the exercise of rights protected by the First Amendment.").

The fact that one aspect of the challenged statutes concerns private property does not defeat the need for First Amendment scrutiny. In Watchtower Bible & Tract Society of New York, Inc. v. Village of Stratton, 536 U.S. 150 (2002), the Supreme Court applied the First Amendment to a law regulating both access to private

---

[4] The challenged criminal statute provides for a maximum of one year imprisonment and a fine of $1,000, § 6-3-414(d)(i), as compared to the general criminal trespassing maximum term of six months and a $750 fine, § 6-3-303(b). Further, the general criminal trespass statute requires a defendant to have knowledge that he is not authorized to enter or remain on land, § 6-3-303(a), unlike the challenged statute, which does not contain a mens rea element. We also note that under the challenged civil statute, prevailing plaintiffs are entitled to recover attorneys' fees and costs. § 40-27-101(d). In contrast, parties in Wyoming generally must pay their own attorneys' fees. See Cline v. Rocky Mountain, Inc., 998 P.2d 946, 952 (Wyo. 2000).
    Wyoming has also enacted a trespass statute making it a misdemeanor to "enter upon the private property of any person to hunt, fish, collect antlers or horns, or trap without the permission of the owner or person in charge of the property." § 23-3-305(b). However, the maximum penalties for this crime are less than those imposed under the challenged criminal statute. § 23-6-202(a)(v) (maximum term of six months' imprisonment).

property and speech. The ordinance at issue there "prohibit[ed] canvassers from going on private property for the purpose of explaining or promoting any cause, unless they receive[d] a permit and the residents visited [had] not opted for a no solicitation sign." Id. at 165 (quotations omitted). Invalidating the ordinance, the Court explained that although the village identified several important interests at stake, the notion that "a citizen must first inform the government of her desire to speak to her neighbors and then obtain a permit to do so" was "a dramatic departure from our national heritage and constitutional tradition." Id. at 166. We thus consider whether the collection of resource data on public lands is entitled to First Amendment protection.

B

Wyoming has adopted expansive definitions of "resource data" and "collect." The former covers any "data relating to land or land use," including information about "air, water, soil, conservation, habitat, vegetation or animal species." §§ 6-3-414(e)(iv); 40-27-101(h)(iii). The latter applies when individuals "take a sample of material" or "acquire, gather, photograph or otherwise preserve information in any form" if those individuals also record the "legal description or geographical coordinates of the location of the collection." §§ 6-3-414(e)(i); 40-27-101(h)(i). Accordingly, prohibited acts include the following activities on public land, so long as an individual also records where such data was gathered: collecting water samples, taking handwritten notes about habitat conditions, making an audio recording of one's observation of vegetation, or photographing animals.

10

Plaintiffs allege that such activities are indispensable to their participation in the formation of public policy. For example, the Western Watersheds Project reports information on water quality, including GPS location data, to the Wyoming Department of Environmental Quality pursuant to the Clean Water Act. Under the Clean Water Act, state agencies must "actively solicit[]" "field data" from the public that can be used to evaluate pollutants in waterways. 40 C.F.R. § 130.7(a), (b)(5)(iii). Similarly, the Natural Resources Defense Council has submitted "geo-tagged" photographs to the U.S. Fish and Wildlife Service in support of a listing petition under the Endangered Species Act. Such petitions must present "substantial scientific" evidence showing that a species is endangered or threatened, which typically includes a record of where the species has been observed. See 16 U.S.C. § 1533(b)(3)(A). Other environmental statutes and regulations likewise require public input in crafting policy. See, e.g., 40 C.F.R. § 1500.1(b) (under the National Environmental Policy Act, federal agencies must consider "[a]ccurate scientific analysis" in making environmental decisions, subject to "public scrutiny"); 43 U.S.C. § 1712(a), (f) (Federal Land Policy and Management Act requires land use plans be developed "with public involvement").

We conclude that plaintiffs' collection of resource data constitutes the protected creation of speech. The Supreme Court has explained that "the creation and dissemination of information are speech within the meaning of the First Amendment." Sorrell, 564 U.S. at 570. "Facts, after all, are the beginning point for much of the speech that is most essential to advance human knowledge and to

11

conduct human affairs." Id. If the creation of speech did not warrant protection under the First Amendment, the government could bypass the Constitution by "simply proceed[ing] upstream and dam[ming] the source" of speech. Buehrle v. City of Key W., 813 F.3d 973, 977 (11th Cir. 2015). Recognizing this danger, the Supreme Court has repeatedly extended the First Amendment to the creation of speech. See Brown v. Entm't Merchants Ass'n, 564 U.S. 786, 793 n.1 (2011) ("Whether government regulation applies to creating, distributing, or consuming speech makes no difference."); Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 336 (2010) ("Laws enacted to control or suppress speech may operate at different points in the speech process."); Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd., 502 U.S. 105, 118 (1991) (laws that establish a "disincentive to create or publish works" subject to First Amendment scrutiny); see also Anderson v. City of Hermosa Beach, 621 F.3d 1051, 1061 (9th Cir. 2010) (noting the Supreme Court has never "drawn a distinction between the process of creating a form of pure speech (such as writing or painting) and the product of these processes (the essay or the artwork) in terms of the First Amendment protection afforded" (emphasis omitted)).

Applying this principle, several of our sibling circuits have held that the First Amendment protects the recording of officials' conduct in public. See Fields v. City of Phila., ___ F.3d ___, 2017 WL 2884391, at *3 (3d Cir. July 7, 2017) ("The First Amendment protects actual photos, videos, and recordings, and for this protection to have meaning the Amendment must also protect the act of creating that material."

12

(citation omitted)); Turner v. Lieutenant Driver, 848 F.3d 678, 689 (5th Cir. 2017) ("[T]he First Amendment protects the act of making film, as there is no fixed First Amendment line between the act of creating speech and the speech itself." (quotation omitted)); Am. Civil Liberties Union of Ill. v. Alvarez, 679 F.3d 583, 595 (7th Cir. 2012) ("The right to publish or broadcast an audio or audiovisual recording would be insecure, or largely ineffective, if the antecedent act of making the recording is wholly unprotected . . . ."); Glik v. Cunniffe, 655 F.3d 78, 82 (1st Cir. 2011) ("Gathering information about government officials in a form that can readily be disseminated to others serves a cardinal First Amendment interest in protecting and promoting the free discussion of governmental affairs." (quotation omitted)); Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000) ("The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest."); Fordyce v. City of Seattle, 55 F.3d 436, 439 (9th Cir. 1995) (noting plaintiff's "First Amendment right to film matters of public interest").

Many of the activities covered by the challenged statutes fit comfortably in the speech-creation category recognized in these cases. An individual who photographs animals or takes notes about habitat conditions is creating speech in the same manner as an individual who records a police encounter. See Alvarez, 679 F.3d at 595-96 ("[B]anning photography or note-taking at a public event would raise serious First Amendment concerns; a law of that sort would obviously affect the right to publish the resulting photograph or disseminate a report derived from the notes."). The

13

statutes' application to taking "a sample of material," §§ 6-3-414(e)(i); 40-27-101(h)(i), runs somewhat further afield of pure speech. But even as to samples, the statutes contain a speech-creation element. They apply only when coupled with the "recording of a legal description or geographical coordinates of the location of the collection," §§ 6-3-414(e)(i), 40-27-101(h)(i), which is information plaintiffs need to engage in environmental advocacy. Such a restriction "operate[s] at the front end of the speech process" and falls within the ambit of the First Amendment. Am. Civil Liberties Union of Ill., 679 F.3d at 596.

Moreover, plaintiffs use the speech-creating activities at issue to further public debate. "There is practically universal agreement that a major purpose of the First Amendment was to protect the free discussion of governmental affairs . . . ." Ariz. Free Enter. Club's Freedom Club PAC v. Bennett, 564 U.S. 721, 755 (2011) (quotations and alteration omitted); see also Glik, 655 F.3d at 82 ("Freedom of expression has particular significance with respect to government because it is here that the state has a special incentive to repress opposition and often wields a more effective power of suppression." (quotation and alterations omitted)). We agree with the Seventh Circuit that "the First Amendment provides at least some degree of protection for gathering news and information, particularly news and information about the affairs of government." Am. Civil Liberties Union of Ill., 679 F.3d at 597.

This is not to say that all regulations incidentally restricting access to information trigger First Amendment analysis. In Zemel v. Rusk, 381 U.S. 1 (1965), the Court explained that the "right to speak and publish does not carry with it the

14

unrestrained right to gather information." Id. at 17. That case concerned a ban on travel to Cuba, which plaintiff argued inhibited the "free flow of information" to citizens who "might acquaint themselves at first hand with the effects abroad of our Government's policies." Id. at 16. The Court held that the restriction did not implicate the First Amendment because "[t]here are few restrictions on action which could not be clothed by ingenious argument in the garb of decreased data flow." Id. at 16-17; see also Pell v. Procunier, 417 U.S. 817, 834 (1974) (rejecting argument that "the Constitution imposes upon government the affirmative duty to make available to journalists sources of information not available to members of the public generally").

Had plaintiffs challenged Wyoming's general trespass statute as impairing their right to gather information, Zemel might control. There, the plaintiff asserted a First Amendment right to be exempt from an otherwise generally applicable law in order to facilitate speech indirectly limited by the law's travel restriction. In contrast, plaintiffs in this case contest the constitutionality of Wyoming's differential treatment of individuals who create speech. For Zemel to be analogous, the federal government there would have had to implement a law banning travel to Cuba for the purpose of writing about or filming what they observe. The challenged statutes apply specifically to the creation of speech, and thus we conclude they are subject to the First Amendment. See Brown, 564 U.S. at 793 n.1.

### C

Because we have determined that the statutes at issue regulate protected speech, plaintiffs ask us to go further. They seek a declaration about the level of scrutiny to be applied and whether the statutes survive the appropriate review. The district court did not conduct these analyses because it held that the statutes did not govern protected speech. As a general rule, we do "not consider an issue not passed upon below." Singleton v. Wulff, 428 U.S. 106, 120 (1976). We think it the better practice to remand to allow the district court to consider those issues in the first instance. See, e.g., United States v. Foote, 413 F.3d 1240, 1251-52 (10th Cir. 2005).

## III

For the foregoing reasons, we **REVERSE** the district court's conclusion that subsections (c) of the 2016 statutes are not entitled to First Amendment protection and **REMAND** for further proceedings consistent with this opinion.

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT
# OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker                                                   Chris Wolpert
Clerk of Court                    September 07, 2017              Chief Deputy Clerk

Mr. David Samuel Muraskin
Ms. Leslie Agnes Brueckner
Public Justice, PC
555 12th Street, Suite 1230
Oakland, CA 94607

Mr. Deepak Gupta
Gupta Wessler
1735 20th Street, NW
Washington, DC 20009

Mr. Michael E. Wall
Ms. Margaret T. Hsieh
Natural Resources Defense Council
40 West 20th Street, 11th Floor
New York, NY 10011

Mr. Justin F. Marceau
University of Denver
Sturm College of Law
2255 East Evans Avenue
Denver, CO 80208-0000


**RE:    16-8083, Western Watersheds, et al v. Michael, et al**
         Dist/Ag docket: 2:15-CV-00169-SWS

Dear Counsel:

Attached is a copy of the opinion of the court issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40, any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in

which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 6 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R. 35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

    Sincerely,

    Elisabeth A. Shumaker
    Clerk of the Court

cc:    Alan Chen
       Matthew Ralph Gaffney
       James Kaste
       Erik Petersen
       Edward Thain Ramey
       Richard Rideout
       Carrie A Scrufari
       Cristina R. Stella
       Matthew Daniel Strugar
       Paige Tomaselli
       Reed Zars

EAS/at