IN THE UNITED STATES DISTRICT COURT

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2018 OCT 29 PM 1: 16

STEPHAN HARRIS, CLERK
CASPER

FOR THE DISTRICT OF WYOMING

---

WESTERN WATERSHEDS PROJECT;
NATIONAL PRESS PHOTOGRAPHERS
ASSOCATION; and NATURAL
RESOURCES DEFENSE COUNCIL,

     Plaintiffs,

vs.

PETER K. MICHAEL, in his official
capacity as Attorney General of Wyoming;
TODD PARFITT, in his official capacity
as Director of the Wyoming Department of
Environmental Quality; PATRICK J.
LEBRUN, in his official capacity as
County Attorney of Fremont County,
Wyoming; JOSHUA SMITH, in his
official as County Attorney of Lincoln
County, Wyoming; CLAY KAINER, in
his official capacity as County and
Prosecuting Attorney of Sublette County,
Wyoming,

     Defendants.

Case No. 15-CV-169-SWS

---

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

This matter comes before the Court on Plaintiff's *Motion for Summary Judgment*
(ECF No. 95) and *State Defendants' Motion for Summary Judgment* (ECF No. 98) joined
by County Defendants Patrick Lebrun and Joshua Smith (ECF No. 105). The parties agree
that this matter is appropriate for resolution by summary judgment with each contending
they are entitled to judgment as a matter of law. The Court, having reviewed the wealth of

motions, memoranda, responses, and other documentation in this case, listening to oral argument, and being otherwise fully advised, finds as follows:

## BACKGROUND

This case has a long history before this Court. The dispute centers on recently enacted Wyoming statutes which impose criminal and civil penalties for data collection on private land or when private land is crossed to reach public land without landowner permission. The Tenth Circuit has summarized many of the relevant facts,

> In 2015, Wyoming enacted a pair of statutes that prohibited individuals from entering "open land for the purpose of collecting resource data" without permission from the owner. Wyo. Stat. §§ 6-3-414 (2015); 40-27-101 (2015). The statutes were largely identical, with one imposing criminal punishment, § 6-3-414(c) (2015), and the other imposing civil liability, § 40-27-101(c) (2015). "Resource data" was defined as "data relating to land or land use," including that related to "air, water, soil, conservation, habitat, vegetation or animal species." § 6-3-414(d)(iv) (2015). And the term "collect" was defined as requiring two elements: (1) taking a "sample of material" or a "photograph," or "otherwise preserv[ing] information in any form" that is (2) "submitted or intended to be submitted to any agency of the state or federal government." § 6-3-414(d)(i) (2015). Information obtained in violation of these provisions could not be used in any proceeding other than an action under the statutes themselves. §§ 6-3-414(e) (2015); 40-27-101(d) (2015). The statutes also required government agencies to expunge data collected in violation of their provisions and forbade the agencies from considering such data "in determining any agency action." §§ 6-3-414(f) (2015); 40-27-101(f) (2015).
>
> The 2015 criminal statute imposed heightened penalties above and beyond Wyoming's general trespass provision. It provided a maximum term of imprisonment of one year and a $1,000 fine for first time offenders. § 6-3-414(c)(i) (2015). Repeat offenders faced a mandatory minimum ten days' imprisonment, a maximum of one year, and a $5,000 fine. § 6-3-414(c)(ii) (2015). The 2015 civil statute imposed liability for proximate damages and "litigation costs," including attorneys' fees. § 40-27-101(c) (2015).
>
> Plaintiffs, who are advocacy organizations, filed suit to challenge the 2015 statutes. They argued that the statutes violated the Free Speech and Petition Clauses of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and were preempted by federal law. Defendants

moved to dismiss. Granting the motion in part and denying it in part, the district court held that plaintiffs had stated plausible free speech, petition, and equal protection claims, but failed to state a preemption claim.

After the district court's decision, Wyoming amended the two statutes. Wyo. Stat. §§ 6-3-414 (2016); 40-27-101 (2016). The revised statutes continue to impose heightened criminal punishment, § 6-3-414, and civil liability, § 40-27-101. But the amendments eliminate reference to "open lands" and instead penalize any individual who without authorization: (1) enters private land "for the purpose of collecting resource data"; (2) enters private land and "collects resource data"; or (3) "crosses private land to access adjacent or proximate land where he collects resource data." §§ 6-3-414(a)-(c); 40-27-101(a)-(c). Under the current version of the statutes, there is no requirement that resource data be submitted to, or intended to be submitted, to a government agency. Instead, the term "collect" now means: (1) "to take a sample of material" or "acquire, gather, photograph or otherwise preserve information in any form"; and (2) "recording . . . a legal description or geographical coordinates of the location of the collection." §§ 6-3-414(e)(i); 40-27-101(h)(i).

Plaintiffs amended their complaint to challenge the 2016 statutes, re-alleging free speech and equal protection claims. Defendants again moved to dismiss. This time, the district court granted the motion in full. It concluded that the revised version of the statutes did not implicate protected speech. Plaintiffs timely appealed.

. . . .

On appeal, plaintiffs challenge only the district court's ruling regarding subsections (c) of the statutes under the Free Speech Clause of the First Amendment.

*Western Watersheds Project v. Michael*, 869 F.3d 1189, 1192–93 (10th Cir. 2017).

Upon review, the Tenth Circuit reversed, concluding "that plaintiffs' collection of resource data constitutes the protected creation of speech." *Id.* at 1195–96. The Court also noted "[t]he fact that one aspect of the challenged statutes concerns private property does not defeat the need for First Amendment scrutiny." *Id.* at 1195. The Tenth Circuit remanded the matter to this Court to determine the appropriate level of scrutiny and whether the statutes survive review. *See id.* at 1197–98. The parties have since engaged in discovery and have now filed cross-motions for summary judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate where a movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a) (emphasis added). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal quotations and citations omitted). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998). The burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *Id.*

"The mere filing of cross motions for summary judgment does not establish that there is no issue of material fact or obligate the trial court to render summary judgment; the trial court must independently determine whether there is a genuine issue of material fact, perusing the record through the standard summary judgment prism, and applying the standard of review to each motion separately." 73 Am. Jur. 2d Summary Judgment § 45. "The denial of one does not require the grant of the other" and "in considering cross motions, the court should draw all inferences against each movant in turn." *See id.* "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed

'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## DISCUSSION

The parties raise numerous issues in their cross-motions that the Court reduces to the following major topics: standing, the validity of a facial challenge, content-neutrality and forum analysis, and the appropriate level of scrutiny. The Court will take each topic in turn and apply the standard of review as outlined above.[1]

### *I. Standing*

Plaintiffs assert the Court should find they do have standing in their motion for summary judgment. Conversely, Defendants argue Plaintiffs lack standing. Prior to addressing the substantive law, the Court believes the issue of standing has already been resolved by the mandate rule and the law of the case. The mandate rule "is a discretion-guiding rule that generally requires trial court conformity with the articulated appellate remand." *United States v. Hicks*, 146 F.3d 1198, 1200 (10th Cir. 1998). "A lower court is 'bound to carry the mandate of the upper court into execution and [cannot] consider the questions which the mandate laid at rest.'" *Estate of Cummings by and through Montoya v. Community Health Systems, Inc.*, 881 F.3d 793, 801 (10th Cir. 2018). Similarly, "[a]fter an appeal, the decision of the appellate court establishes the law of the case and ordinarily will be followed on remand, with the principle applicable to all issues previously decided,

---

[1] The Court makes every effort to separate the parties' motions, however, the parties have treated their separate motions as responsive to one another. The Court will apply the correct burden to the relevant party when addressing each motion even if the arguments often overlap.

5

either explicitly or by necessary implication." *N. Nat. Gas Co. v. Approximately 9117.53 Acres in Pratt, Kingman*, No. 10-1232-JTM, 2018 WL 1138284, at *3 (D. Kan. Mar. 2, 2018) (citing *Vehicle Market Research, Inc. v. Mitchell Int'l, Inc.*, 839 F.3d 1251, 1256 (10th Cir. 2016)). The parties conceded at oral argument that standing was a jurisdictional issue that the Tenth Circuit necessarily passed on in this case. *See generally Western Watershed*, 869 F.3d at 1189; *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* (May 24, 2016) (finding to establish federal jurisdiction a plaintiff must show the elements of Article III standing are satisfied). Further, the Tenth Circuit specifically instructed this Court on remand to determine the appropriate "level of scrutiny to be applied and whether the statutes survive the appropriate review."[2] *Western Watershed*, 869 F.3d at 1197. This Court's analysis is limited by these instructions. Even if standing is not resolved by these doctrines, Plaintiffs still prevail on the merits of the standing analysis.

"At the summary judgment stage, a plaintiff's standing must be supported by specific evidentiary facts and not by mere allegations." *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997). To establish standing, a plaintiff must demonstrate an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010)). There are grave concerns over the suppression of protected speech even when addressing the matter

---

[2] Given that the remand was limited to subsection (c) of the statutes in question no need exists to discuss any issues concerning severability.

of standing. "Even where a First Amendment challenge could be brought by one actually engaged in protected activity, there is a possibility that, rather than risk punishment for his conduct in challenging the statute, he will refrain from engaging further in the protected activity. Society as a whole then would be the loser. Thus, when there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged." *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984).

Given these concerns, "plaintiffs in a suit for prospective relief based on a 'chilling effect' on speech can satisfy the requirement that their claim of injury be 'concrete and particularized' by (1) evidence that in the past they have engaged in the type of speech affected by the challenged government action; (2) affidavits or testimony stating a present desire, though no specific plans, to engage in such speech; and (3) a plausible claim that they presently have no intention to do so because of a credible threat that the statute will be enforced." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006). "[C]oncerns over the chilling effects on speech are significantly more acute when a criminal sanction is involved rather than a civil cause of action." *Animal Legal Defense Fund v. Reynolds*, 297 F. Supp. 3d 901, 916 (S.D. Iowa 2018).

Assessing whether there is a credible threat of enforcement is often a difficult matter. *See Initiative & Reform Inst.*, 450 F.3d at 1090. "The chilling effect, to amount to an injury, must arise from an objectively justified fear of real consequences, which can be satisfied by showing a credible threat of prosecution or other consequences following from the statute's enforcement." *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir. 2004). Still, First

7

Amendment doctrine allows for reliance on general fears of enforcement or prosecution when protected speech claims are involved. *See Babbitt v. United Farm Workers Nat. Union,* 442 U.S. 289, 302 (1979) (holding that fear of prosecution was not imaginary or speculative, even though the challenged criminal penalty provision had never been applied to plaintiffs' proposed conduct, where statute on its face proscribed the proposed conduct and where "the State has not disavowed any intention of invoking the criminal penalty provision"); *Initiative & Referendum Inst.*, 450 F.3d at 1090 (finding credible threat where no reason to doubt law would be enforced); *Threats Of Enforcement*, 13B Fed. Prac. & Proc. Juris. § 3532.5 (3d ed.) (describing general trend). "Additionally, the threat of prosecution is greater under a statute enacted relatively recently." *See Reynolds*, 297 F. Supp. 3d at 916. (citing *St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481, 486 (8th Cir. 2006)).

As before, the Court finds that Plaintiffs have sufficiently established standing (*see* ECF No. 40 (finding Plaintiffs had standing at motion to dismiss stage during first challenge)). First, taking Plaintiffs' motion and drawing all inferences against Plaintiffs, they have shown standing to bring a First Amendment claim. Plaintiffs have shown a causal connection and redressability, which Defendants do not contest. Plaintiffs have also shown, and Defendants do not contest, they have engaged in the past in the type of speech affected by the challenged government action. Further, Plaintiffs have provided affidavits stating a present desire, though no specific plans, to engage in such speech. Only element three of the *Initiative & Referendum Inst.* 'chill test' is truly at issue.

Defendants argue any harm resulting from mistaken trespass is conjectural because Plaintiffs are professionals who should know their location and cannot rely on the assumption they will mistakenly trespass. Defendants point to the fact that Plaintiffs can utilize various measures to ensure they do not trespass and can exercise caution knowing the limitations of the resources available. These arguments ignore the language of the test for standing. Plaintiffs must only assert a "a plausible claim" that they have self-censored "because of a credible threat that the statute will be enforced." *Initiative & Referendum Inst.*, 450 F.3d at 1089. Even taking all of Defendant's arguments as true, Plaintiffs can *plausibly* argue given the inaccuracies of maps and GPS and the intertwined nature of public and private lands in Wyoming, that Plaintiffs have refrained from protected speech activity out of fear of enforcement. There is no indication there is not a credible threat of enforcement given the recency of the statute and lack of a governmental vow of non-enforcement. Plaintiffs provide the report of an expert which points out the inaccuracies of GPS technology and even Defendants agree that GPS and maps are not "100% accurate" (*see* ECF Nos. 96-12, 99). Plaintiffs also provide affidavits of individuals alleging fear of prosecution given these inaccuracies and their desired conduct. While Defendants point out extensive alternate measures Plaintiffs could take, the same risk of inaccuracy applies. Additionally, some of these measures could be extremely costly, at least in time if not in other resources. *See American Civil Liberties Union v. Johnson*, 194 F.3d 1149, 1154 (10th Cir. 1999) (citing *Virginia v. American Booksellers Assoc.*, 484 U.S. 383 (1988)) (finding "injury-in-fact requirement of standing was met 'as the law is aimed directly at plaintiffs, who, if their interpretation of the statute is correct, will have to take significant and costly

compliance measures or risk criminal prosecution.'")[3]  The assertion that Plaintiffs should

just leave a buffer out of caution is equally problematic given the protected speech interest

at stake in data collection on all the relevant public land, not just that which is far from a

private border.

Plaintiffs have provided specific affidavits to prove that self-censorship has resulted

from the credible threat of prosecution (*see* ECF Nos. 96-1, 96-3, 96-4, 96-9, 96-10, 96-

11) (Affidavits of Sharon Buccino, Erik Molvar, Briana Mordick, Jonathan Ratner, Angus

Thuermer Jr., and Mary Umekubo).  Defendants do not directly challenge these affidavits

in their responsive briefing beyond stating the chill is "unsupported by [Plaintiffs']

responses to the State Defendants' interrogatories," but do thoroughly cover this argument

in their own motion for summary judgment.  Even drawing all inferences against Plaintiffs,

the affidavits do support a finding of standing.  The Natural Resources Defense Council

("NRDC") Plaintiffs point to an investigation of air quality near the Beartooth Front that

was suspended in light of the 2015 and 2016 statutes and that NRDC continues to be

interested in carrying out (*see* Buccino Aff. ¶ 12-13).  The fact that this chill began with

the 2015 laws and continues with the laws today does not invalidate the claim as

Defendants suggest.

The Western Watersheds Project ("WWP") Plaintiffs also identify numerous sites

they would collect data from if not for the threat imposed by the statutes (*see* Molvar Aff.

---

[3] The Court does not find the Defendants attempt to distinguish this authority persuasive.  Plaintiff is correct that in this case, as in *American Booksellers*, the challenged statute facially chills the Plaintiffs' speech as well as possible third parties.  This harm is the relevant issue.

¶ 21). The Affidavit indicates numerous measures have been taken to prevent mistaken trespass, but that "maps often are not at the scale needed to determine exact boundaries, boundaries in Wyoming are often unmarked, and, even if WWP knows the exact location of the boundary, GPS devices are imprecise" (*see id.* ¶ 15). Defendants argue WWP Plaintiffs could do more to ascertain the correct boundaries, but even taking this as true, Plaintiffs' can establish standing where the statute imposes sufficiently significant and costly compliance measures. *See Johnson*, 194 F.3d at 1154. Defendants allege WWP representative Jonathan Ratner would be chilled even by the general trespass statute given his deposition testimony, making his affidavit meaningless. However, after discussing this chill, Mr. Ratner goes on to immediately indicate he had still engaged in his collection activities prior to these statutes given his good faith about his use of only public lands. The removal of this good faith protection has led to chilling for Mr. Ratner (*see* ECF No. 99-7) (Ratner Depo. at 47); *see also* Wyo. Stat. Ann. § 6-3-303(a) ("A person is guilty of criminal trespass if he enters or remains on or in the land or premises of another person, *__knowing__ __he is not authorized to do so, or after being notified to depart__* or to not trespass") (emphasis added). Mr. Ratner also indicated these new statutes have prevented him from further activity since they illustrate there will be punishment from "significantly powerful political enemies" for resource data collection (*see id.* at 84). Many of Defendants arguments seem to boil down to 'if the Plaintiffs simply do not seek to engage in their protected speech creation activities, they will not risk violating the statute.' This is not constitutionally acceptable.

Finally, Defendants challenge the specific claims of Plaintiff National Press Photographers Association ("NPPA"). NPPA Plaintiffs identify several stories and photographs they have not been able to complete given fears of mistaken trespass and the pressing timelines that exist in the field of journalism (*see* Thuermer Aff. ¶¶ 12-14). Defendants argue NPPA Plaintiffs could take measures to avoid much of this risk. However, this again ignores what Plaintiffs need to show to establish the challenged element, a plausible claim that they presently have no intention to engage in the protected speech or conduct because of a credible threat that the statute will be enforced. Further, given the highly time-sensitive deadlines involved in journalism, NPPA Plaintiffs have a strong argument regarding the high costs of compliance measures. The NPPA allegations support a finding of standing.

Turning to Defendants' motion for summary judgment and making all inferences against Defendants, the Court finds this motion must be denied. Defendants have not shown Plaintiffs' chill claims are too speculative or that the specific Plaintiffs lack concrete injuries. Plaintiffs have made a plausible claim that they presently have no intention to carry out their desired speech activities because of a credible threat that the statutes will be enforced. Defendants make identical arguments in their own motion for summary judgment as they do in response to Plaintiffs' motion. These claims will be rejected for the reasons outlined above. If anything, Plaintiffs' claims are even stronger in this framework given the posture of this motion which requires the Court to draw all inferences in favor of Plaintiffs. The Court finds Plaintiffs have standing and now turns to the claims on the merits.

## II. Facial Challenge

First, the Court must address whether the challenge is as-applied or facial in nature. Defendants argue Plaintiffs' facial challenge fails because "the laws at issue can be applied constitutionally, at a minimum, in some circumstances." Defendants rely upon *United States v. Salerno*, 481 U.S. 739, 745 (1987), for the proposition that a "challenger must establish that no set of circumstances exists under which the Act would be valid." Plaintiffs argue that Defendants misstate the law in their responsive briefing. Defendants also allege Plaintiffs' as-applied challenge fails because "the laws have not been 'applied' to anyone, and the record is insufficient" (ECF No. 99 at 20–21). Plaintiffs ask the Court to find the statutes unconstitutional and enjoin their enforcement.

A plaintiff "may challenge the constitutionality of a statute by asserting a facial challenge, an as-applied challenge, or both. However, the label is not what matters. "[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *See United States v. Supreme Court of New Mexico*, 839 F.3d 888, 907 (10th Cir. 2016), cert. denied, 138 S. Ct. 130, 199 L. Ed. 2d 184 (2017), and cert. denied, 138 S. Ct. 78, 199 L. Ed. 2d 184 (2017) (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010)). "[F]acial challenges and as-applied challenges can overlap conceptually." *Id.* "The important point . . . is whether the "plaintiffs' claim and the relief that would follow . . . reach beyond the particular

circumstances of the [] plaintiffs." *Id.* at 914. Although Plaintiffs have referenced both types of challenge, the end relief sought and primary analysis is facial in nature.[4]

The fact that a Plaintiff brings "a facial challenge does not automatically compel the application of a specific test, must less the *Salerno* formulation." *Doe v. City of Albuquerque*, 667 F.3d 1111, 1124 (10th Cir. 2012). "[I]n practice, '[a] facial challenge is best understood as a challenge to the terms of the statute, not hypothetical applications, and is resolved simply by applying the relevant constitutional test to the challenged statute.'" *Saucedo v. Gardner*, No. 17-CV-183-LM, 2018 WL 3862704, at *8 (D.N.H. Aug. 14, 2018) (quoting *Supreme Court of New Mexico*, 839 F.3d at 917)). The Tenth Circuit has noted "we have construed *Salerno's* no-set-of-circumstances language 'not as setting forth a test for facial challenges, but rather as describing the result of a facial challenge in which a statute fails to satisfy the appropriate constitutional standard.' . . . 'In other words, where a statute fails the relevant constitutional test . . . it can no longer be constitutionally applied to anyone—and thus there is 'no set of circumstances' in which the statute would be valid.'" *Supreme Court of New Mexico*, 839 F.3d at 917; *see also Holland v. Williams*, No. 16-CV-00138-RM-MLC, 2018 WL 2938320, at *2 (D. Colo. June 12, 2018) (discussing *Salerno* and finding "the 'in every application' test is not a test at all."); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352,

---

[4] The Court recognizes "the Supreme Court has instructed courts facing simultaneous as-applied and facial challenges to first resolve the as-applied challenge before addressing the facial challenge in order to avoid 'proceed[ing] to an overbreadth [facial] issue unnecessarily.'" *Martinez v. City of Rio Rancho*, 197 F. Supp. 3d 1294, 1309 (D.N.M. 2016). However, given the lack of an overbreadth challenge, the ultimate remedy sought, and the overlapping nature of Plaintiffs' challenges, the Court will have to proceed to a facial challenge regardless and thus addresses that matter directly.

404 (S.D.N.Y. 2015) ("[T]here are exceptions to the *Salerno* standard. First, it plainly does not apply to First Amendment claims.") "The relevant constitutional test, however, remains the proper inquiry." *Doe*, 667 F.3d at 1127; *Congregation Rabbinical Coll.*, 138 F. Supp. 3d at 406 (describing *Doe* as "analyzing, in the context of a facial challenge, the particular circumstances of the plaintiffs and noting that it is proper to 'appl[y] the appropriate constitutional test to the restriction at issue,' rather than 'conjur[ing] up whether or not there is a hypothetical situation in which application of the statute might be valid.'") The Court will determine the correct constitutional test by analyzing whether the statutes are content based or content neutral.

### III. Content Neutrality

Plaintiffs and Defendants dispute whether the Wyoming statutes are content neutral or content based. "[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. As a result, the Constitution demands that content-based restrictions on speech be presumed invalid . . . and that the Government bear the burden of showing their constitutionality." *United States v. Alvarez*, 567 U.S. 709, 715–17 (2012) (internal citations omitted); *see also Hill v. Colorado*, 530 U.S. 703, 769 (2000) ("The Court time and again has held content-based or viewpoint-based regulations to be presumptively invalid.") "[T]he First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic. Thus, a speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter." *Reed v.*

*Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2230 (2015). Put simply, "[g]overnment regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 2227. "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Id.* at 2228. When analyzing a content-based restriction under strict scrutiny, the statute "is narrowly tailored only if it is the least restrictive means of achieving the government's compelling objective." *Verlo v. Martinez*, 820 F.3d 1113, 1134 (10th Cir. 2016).

First, the Court turns to Plaintiffs' motion and allegation that the statutes are content based. The plain language of Wyoming statute § 6-3-414 provides:

> (c) A person is guilty of trespassing to access adjacent or proximate land if he:
> (i) Crosses private land to access adjacent or proximate land where he collects resource data; and
> (ii) Does not have:
> (A) An ownership interest in the real property or, statutory, contractual or other legal authorization to cross the private land; or
> (B) Written or verbal permission of the owner, lessee or agent of the owner to cross the private land.

The language of the civil statute is nearly identical but replaces "guilty of trespassing" with "commits a civil trespass." *See* Wyo. Stat. Ann. § 40-27-101(c). The statutes define the following terms:

> "Collect" means to take a sample of material, acquire, gather, photograph or otherwise preserve information in any form and the recording of a legal description or geographical coordinates of the location of the collection;
> . . . .

> ***"Resource data" means data relating to land or land use***, including but not
> limited to data regarding agriculture, minerals, geology, history, cultural
> artifacts, archeology, air, water, soil, conservation, habitat, vegetation or
> animal species. "Resource data" does not include data:
> (A) For surveying to determine property boundaries or the location of survey
> monuments;
> (B) Used by a state or local governmental entity to assess property values;
> (C) Collected or intended to be collected by a peace officer while engaged in
> the lawful performance of his official duties.

Wyo. Stat. Ann. §§ 6-3-414(e); 40-27-101(h) (emphasis added).  The collection of data

under these statutes constitutes the exercise of free speech. *See Western Watershed*, 869

F.3d at 1195–96.  The statutes, on their face, penalize only the collection of resource data

relating to land or land use.  A content analysis is necessary to determine if the statutes are

applicable.  This is a clear case of content-based statutes.

   In response to Plaintiffs' motion Defendants argue the laws are content neutral

because "they apply regardless of the contents of the 'resource data' collected" (ECF No.

104 at 7).  This is a viewpoint-neutrality argument.  It is not necessary for the law to

discriminate against a particular viewpoint to be subject to strict scrutiny. *See Reed*, 135

S. Ct. at 2228.   Further, Defendants argue the laws are focused on the manner in which

the speech is conveyed and not the content citing *Hill v. Colorado*.  Again, this is patently

untrue.  In *Hill v. Colorado*, 530 U.S. at 707, the Supreme Court addressed a statute which

made it unlawful for any person within 100 feet of a health care facility's entrance to

"knowingly approach" within 8 feet of another person, without that person's consent, in

order to pass "a leaflet or handbill to, displa[y] a sign to, or engag[e] in oral protest,

education, or counseling with [that] person."  The Court found the statute was content

neutral, concluding the law:

simply establishes a minor place restriction on an extremely broad category of communications with unwilling listeners. Instead of drawing distinctions based on the subject that the approaching speaker may wish to address, the statute applies equally to used car salesmen, animal rights activists, fundraisers, environmentalists, and missionaries. Each can attempt to educate unwilling listeners on any subject, but without consent may not approach within eight feet to do so.

*Id.* at 723. The State attempts to analogize this to the facts of this case. However, *Hill* is inapplicable. The Wyoming laws do not attempt to penalize *any* data collection after crossing private land to access adjacent lands, but only the collection of data *relating to land or land use*. The laws, on their face, are content based and at least presumptively subject to strict scrutiny.

In Defendants' motion for summary judgment, Defendants make nearly identical arguments. Again, the Defendants argue the laws are viewpoint neutral, but this is irrelevant.[5] Defendants also argue that the laws apply equally to any speaker, but this does not make the laws content neutral. *See Reed*, 135 S. Ct. at 2230 ("[A] speech regulation targeted at specific subject matter is content based."). Finally, Defendants cite to *Turner Broadcasting System, Inc., v. F.C.C.*, 512 U.S. 622 (1994), for the proposition that a statute is content neutral when it regulates "only upon the manner in which the speaker transmits their messages to viewers, not upon the messages they carry."

---

[5] And questionable given the evidence of animus presented by Plaintiffs. Still, given the way in which the Court resolves the motions, strict scrutiny will apply regardless and a further finding on viewpoint neutrality is irrelevant to this standard. *See Pahls v. Thomas*, 718 F.3d 1210, 1229 (10th Cir. 2013) ("Viewpoint discrimination is a subset—and a particularly "egregious form"—of content discrimination. . . . Both content- and viewpoint-based speech restrictions are presumptively invalid.")

*Id.* at 645. The law in *Turner* required cable operators to carry the signals of a specified number of local broadcast television stations. *Id.* at 630. This case is easily distinguished. In *Turner*, the Supreme Court recognized there was no content component to the statute. "Although the provisions interfere with cable operators' editorial discretion by compelling them to offer carriage to a certain minimum number of broadcast stations, the extent of the interference does not depend upon the content of the cable operators' programming. . . . The number of channels a cable operator must set aside depends only on the operator's channel capacity, *see* 47 U.S.C. §§ 534(b)(1), 535(b)(2)–(3) (1988 ed., Supp. IV); hence, an operator cannot avoid or mitigate its obligations under the Act by altering the programming it offers to subscribers." *Id.* at 643–44. The Wyoming statutes, however, only prevent speech regarding land and land use after crossing private property without permission, not speech about other topics.

The Wyoming statutes are clearly content based. For the reasons above, the Court will grant Plaintiffs' motion for summary judgment on this issue even after drawing all inferences against Plaintiffs. As explained in the preceding paragraph, the Court will deny Defendants' motion on this issue.

### *IV. Forum Analysis*

Defendants argue Plaintiffs' challenge is premature[6] because it is unclear what type

of land[7], and thus forum, Plaintiffs will be on when subject to punishment under the

statutes. The Court finds this argument unavailing.

---

[6] To the extent the Court construes this as a ripeness claim, this claim is unpersuasive. *See Supreme Court of New Mexico*, 839 F.3d at 903 ("The requirements of standing and constitutional ripeness overlap; if an injury 'is sufficiently 'imminent' to establish standing, the constitutional requirements of the ripeness doctrine will necessarily be satisfied.")

[7] Defendants also argue Plaintiffs have no protected speech right on private land based upon this Court's prior order. This Court does not read the Tenth Circuit opinion so narrowly. *See Western Watershed*, 869 F.3d at 1195 ("The fact that one aspect of the challenged statutes concerns private property does not defeat the need for First Amendment scrutiny."). A district court in the District of Utah has faced a similar issue, and concluded:

> The State's final argument is that even if the lying and recording criminalized by the Act are otherwise protectable speech, the First Amendment plays no role in this case because the Act applies only to speech on private property, and the First Amendment does not apply on private property.
> . . . .
> The cases cited by the State deal with the first concept. They stand for the proposition that the First Amendment is typically not a defense to generally-applicable tort laws. Specifically, as relevant here, they hold that the First Amendment does not provide a license to trespass on private property, and, as a corollary, nor does it provide a defense in a trespass suit. In short, the cases cited by the State answer the question of whether a landowner can remove someone from her property or sue for trespass even when the person wishes to exercise First Amendment rights. And generally, as the cases make clear, the answer is yes. But that is not the question before the court. The question here is whether the State (not a private landowner) can prosecute (not sue for damages) a person based on her speech on private property. And at this point in the analysis, the question is the threshold one of whether it can do so without even justifying or tailoring the law. The State cites no authority for this proposition. Nor has the court found any, and seemingly for good reason: it is contrary to basic First Amendment principles. If a person's First Amendment rights were extinguished the moment she stepped foot on private property, the State could, for example, criminalize any criticism of the Governor, or any discussion about the opposition party, or any talk of politics whatsoever, if done on private property. This runs directly afoul of the First Amendment, which "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people," whether in the public square or in private coffee shops and cafes.

*Animal Legal Def. Fund v. Herbert*, 263 F. Supp. 3d 1193, 1208–09 (D. Utah 2017). The fact that some instances of criminalized conduct may occur on private land does not prevent this Court from conducting its' analysis. Defendants also ignore the fact that the law would be applicable to data collectors on private land with landowner permission who incidentally crossed other private land without permission. Defendants conceded at oral argument such individuals have a similar speech interest to those on public land. The Court asked both parties at oral argument whether the framework described in *Herbert* required a distinct analysis for the civil statute at issue in this case. Neither party seemed to believe any distinct analysis was required and the Court will not push the matter any further *sua sponte*.

A restriction that regulates only the time, place, or manner of speech may be imposed so long as it is reasonable. But when regulation is based on the content of speech, governmental action must be scrutinized more carefully to ensure that communication has not been prohibited "merely because public officials disapprove the speaker's views. As a consequence, we have emphasized that time, place, and manner regulations must be 'applicable to all speech irrespective of content.' Governmental action that regulates speech on the basis of its subject matter 'slip[s] from the neutrality of time, place, and circumstance into a concern about content.' Therefore, *a constitutionally permissible time, place, or manner restriction may not be based upon either the content or subject matter of speech.*

*Consol. Edison Co. of New York v. Pub. Serv. Comm'n of New York*, 447 U.S. 530, 536 (1980) (emphasis added). Courts have repeatedly found forum analysis inappropriate in the case of content-based restraints on speech. *See Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 879 (1997) ("This argument is unpersuasive because the CDA regulates speech on the basis of its content. A 'time, place, and manner' analysis is therefore inapplicable."); *see also Sorrell v. IMS Health*, 564 U.S. 552, 571 (2011) (resolving a First Amendment challenge to a content-based state statute without addressing any type of forum analysis); *Hill v. Colorado*, 530 U.S. 703, 770, 120 S. Ct. 2480, 2518–19 (2000) (Kennedy, J., dissenting) ("Statutes which impose content-based or viewpoint-based restrictions are subjected to exacting scrutiny. The State has failed to sustain its burden of proving that its statute is content and viewpoint neutral. . . . The *Ward* time, place, and manner analysis is simply inapplicable to this law. I would hold the statute invalid from the very start."); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 63 n.6 (1983) (Brennan, J., dissenting) (citing *Jaffe v. Alexis,* 659 F.2d 1018, 1020–1021, n. 2 (9th Cir. 1981) ("When the content of the speaker's message forms the basis for its selective regulation, public

forum analysis is no longer crucial; the government must still justify the restriction and the justification 'must be scrutinized more carefully to ensure that communication has not been prohibited 'merely because public officials disapprove of the speaker's views.'") The Court rejects Defendants' argument and finds a delay until enforcement is inconsistent with the standing analysis above and would not result in any special forum analysis.

## *V. Strict Scrutiny*

The Court has reached the conclusion that strict scrutiny is proper as the statutes are content based. Plaintiffs argue the laws cannot survive strict scrutiny. In their own motion Defendants do not address strict scrutiny, however they do discuss it in the responsive briefing to Plaintiffs' motion. To survive strict scrutiny, the government must "prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 135 S. Ct. at 2231. "The State must specifically identify an 'actual problem' in need of solving, and the curtailment of free speech must be actually necessary to the solution." *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 799 (2011) (internal citations omitted). The asserted governmental interest in this case is "to protect private citizens' property rights" (ECF No. 104 at 15–16). However, the statutes make no attempt at regulating trespass by anyone other than those that subsequently engage in land related data collection, i.e., other than those that subsequently engage in protected speech. *See Western Watershed*, 869 F.3d at 1195–96. This is particularly problematic given the fact that landowners deposed in this case stated they had equal or greater problems with hunters, campers, climbers, government officials, and others (*see* ECF No. 96-7). The State admitted as much at oral argument, referring to data collectors as "a small portion of overall

trespassers." At least one landowner indicated she was fine with these statutes because only data collectors are "out to damage my reputation" (ECF No. 96-7 at 14). Whether or not this other uncovered conduct is protected speech, the lack of regulation seriously undermines the asserted governmental interest in this case. *See Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656, 1668 (2015) ("In a textbook illustration of that principle, we invalidated a city's ban on ritual animal sacrifices because the city *failed to regulate vast swaths of conduct that similarly diminished its asserted interests* in public health and animal welfare.") (emphasis added). The government has no legitimate explanation for the specific targeting of data collectors over other types of individuals engaged in trespass.

Defendants have an even greater problem when it comes to narrow tailoring. They have failed to identify any reason why the curtailment of speech is "actually necessary to the solution" of the identified problem. *See Brown*, 564 U.S. at 799. Trespass can be regulated and criminalized without any requirement of subsequent engagement in protected speech activities. "[T]he burden is on the Government to prove that the proposed alternatives will not be as effective as the challenged statute." *Yes On Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1030 (10th Cir. 2008) (quoting *Ashcroft v. ACLU*, 542 U.S. 656, 665 (2004)). "To meet the requirement of narrow tailoring, the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *McCullen v. Coakley*, 134 S. Ct. 2518, 2540 (2014). "[I]t is not enough for [a state] simply to say that other approaches have not worked." *Id.*

Here, the government has not proven a strengthening of the state's trespass laws would not accomplish the same goals without infringing on protected speech. Defendants argue any alternative statute would be at best, equally chilling and restrictive because the notice requirement would have to be removed to achieve any results. This argument is speculative at best and is a not-so-veiled attempt at burden shifting. The Court is not persuaded. Wyoming could also more rigorously enforce its' existing statutes. *See The Indep. Inst. v. Buescher*, 718 F. Supp. 2d 1257, 1277 (D. Colo. 2010) ("It is reasonable to conclude that more enforcement would lead to more deterrence.") There is simply no plausible reason for the specific curtailment of speech in the statutes beyond a clear attempt to punish individuals for engaging in protected speech that at least some find unpleasant. The laws are not narrowly tailored and fail strict scrutiny.

## CONCLUSION

The First Amendment's guarantee of free speech in this case leads the Court to find Wyoming statutes §§ 6-3-414(c) and 40-27-101(c) are facially unconstitutional. Therefore, it is hereby

ORDERED that Plaintiff's *Motion for Summary Judgment* (ECF No. 95) is GRANTED, it is;

FURTHER ORDERED that *State Defendants' Motion for Summary Judgment* (ECF No. 98) is DENIED, it is;

FURTHER ORDERED that the State of Wyoming is permanently enjoined from enforcing Wyoming statutes §§ 6-3-414(c) and 40-27-101(c) as both are in violation of the First Amendment of the Constitution of the United States of America.

Dated this 29th day of October, 2018.

Scott W. Skavdahl
United States District Judge