**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

WESTERN WATERSHEDS PROJECT;⟩
NATIONAL PRESS PHOTOGRAPHERS⟩
ASSOCIATION; and NATURAL RESOURCES⟩
DEFENSE COUNCIL,⟩
    *Plaintiffs*,⟩
⟩
v.⟩    Civil No. 15-cv-169-S
⟩
BRIDGET HILL, in her official capacity⟩
as Attorney General of Wyoming; TODD⟩
PARFITT, in his official capacity as Director⟩
of the Wyoming Department of Environmental⟩
Quality; PATRICK J. LEBRUN, in his official⟩
capacity as County Attorney of Fremont⟩
County, Wyoming; JOSHUA SMITH, in his⟩
official capacity as County Attorney of⟩
Lincoln County, Wyoming; and⟩
MICHAEL CROSSON, in his official capacity⟩
as County and Prosecuting Attorney of Sublette⟩
County, Wyoming,⟩
    *Defendants*.⟩

---

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES**

---

Plaintiffs respectfully move the Court for an award of reasonable attorneys' fees and

costs for this lawsuit pursuant to the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988,

and Local Rule 54.3. The requested fee award is appropriate because Plaintiffs prevailed on the

merits and vindicated the purposes of the Act. Plaintiffs seek a total fee recovery of $795,542,

which reflects a reasonable number of hours multiplied by reasonable billing rates, as detailed in

this memorandum of law and the declarations and exhibits of Plaintiffs' counsel and expert.

## BACKGROUND AND PROCEDURAL HISTORY

The State of Wyoming enacted two laws ("Data Censorship Laws" or "the Laws") in 2015 that created criminal and civil penalties for whistleblowers and citizen-scientists who collected and disseminated certain information about public and private lands within the State, including information about livestock grazing activities, resource extraction, and adverse environmental impacts. Wyo. Stat. §§ 6-3-414, 40-27-101 (2015). The Data Censorship Laws expressly linked liability to communicating with government agencies. *See id.* § 6-3-414(c), (d)(i). They even penalized the creation of information that others submitted to the government, regardless of whether the creator was involved with that submission. *Id.*

The environmental data collection targeted by the Laws is integral to Plaintiffs' missions, including their participation in the formation of public policy. For example, the National Press Photographers Association's members regularly take photos for news stories regarding the environment, which if used by others in their advocacy, would have created liability for the photographers under the Laws. *See* Decl. of Mickey Osterreicher ¶¶ 12-13 ("Osterreicher Decl."). Western Watersheds Project collects information on water quality, including GPS location data, and reports it to the Wyoming Department of Environmental Quality to ensure compliance with the Clean Water Act. *See* 40 C.F.R. § 130.7(b)(5)(iii) (requiring state agencies to "actively solicit[ ]" "field data" from the public that can be used to evaluate pollution in waterways). Such data collection and reporting is precisely the type of activity that the Data Censorship Laws prohibited. And Natural Resources Defense Council has submitted geo-tagged photographs to the U.S. Fish and Wildlife Service to support NRDC's petition to list an imperiled species under the Endangered Species Act. *See* 16 U.S.C. § 1533(b)(3). Following enactment of these Laws, Plaintiffs halted data collection efforts in Wyoming. *See* ECF Nos. 96-

1, 96-3, 96-4, 96-9, 96-10, 96-11 (affidavits attesting to Plaintiffs' decision to curtail data gathering efforts in Wyoming because of a credible fear of prosecution).

Plaintiffs sued, arguing that the Data Censorship Laws violated the Free Speech and Petition Clauses of the First Amendment, as well as the Equal Protection Clause of the Fourteenth Amendment, and were preempted by federal law. Compl. for Declaratory and Injunctive Relief, ECF No. 1. Defendants moved to dismiss the complaint. Mot. to Dismiss on behalf of Defs. Peter K. Michael, Todd Parfitt and Matthew Mead, ECF No. 28. The Court denied the motion in part and expressed "serious concerns . . . as to the Constitutionality of" various provisions of the Laws. Order Granting in Part & Denying in Part Defs.' Mot. to Dismiss at 38, ECF No. 40 ("First Mot. to Dismiss Order").[1]

In response to this Court's decision, the Wyoming Legislature amended the Laws in 2016. The State removed language specifically targeting the submission of data to the government but continued to suppress disfavored speech by tying liability to the "collection" of "resource data." *See* Wyo. Stat. §§ 63-414(a)-(c), (e)(i), 40-27-101(a)-(c) (2016). The revised Laws defined "resource data" and "collect" broadly, encompassing a wide swath of activities such as writing notes on habitat conditions, photographing wildlife, and taking water samples. *See id.* § 6-3-414(e)(i), (e)(iv), 40-27-101(h)(i), (h)(iii). They also specified "collection" to mean information gathered with "a legal description or geographical coordinates of the location of the collection"—the type of information required by state and federal agencies to participate in environmental rulemaking and used by news photographers to ensure accurate reporting. *See id.*

---

[1] The Court dismissed the Governor of Wyoming as a defendant and Plaintiffs' preemption claim. First Mot. to Dismiss Order at 37-38.

Plaintiffs amended their complaint to challenge the new Laws. First Am. Compl. for Declaratory & Injunctive Relief, ECF No. 54. Defendants once again moved to dismiss, ECF No. 58, and this time the Court granted the motion. Order Granting Mot. to Dismiss, ECF No. 64. This Court held that the revised Laws did not implicate protected speech because, although they prohibited resource data collection on public land, they created liability only if the collector touched private land along the way. *Id.* at 16. The Court also rejected Plaintiffs' Equal Protection claim. *Id.* at 21-25.

Plaintiffs appealed the Court's First Amendment ruling regarding subsections (c) of the Laws, which created liability solely for data collected on public lands. Because Plaintiffs did not intend to collect resource data on private land, they chose not to appeal subsections (a) and (b) of the statutes.

The Tenth Circuit reversed and remanded, concluding that the Data Censorship Laws "are not shielded from constitutional scrutiny merely because they touch upon access to private property. Although trespassing does not enjoy First Amendment protection, the statutes at issue target the 'creation' of speech by imposing heightened penalties on those who collect resource data." *W. Watersheds Project v. Michael*, 869 F.3d 1189, 1192 (10th Cir. 2017). The court of appeals emphasized that "plaintiffs' collection of resource data constitutes the protected creation of speech." *Id.* at 1195-96.

After the Tenth Circuit remanded the matter for further proceedings, Plaintiffs tried to initiate settlement discussions, but Defendants declined. *See* Decl. of David Muraskin ¶ 47 ("Muraskin Decl."). Consequently, the parties engaged in fact and expert discovery. Defendants served nearly 240 interrogatories and document requests on Plaintiffs. *Id.* Plaintiffs took

depositions of the State's fact witnesses, and Defendants deposed Plaintiffs' standing witnesses and GIS (geographic information system) expert.

The parties then cross-moved for summary judgment. *See* ECF Nos. 95, 98, 105. The Court granted Plaintiffs' motion and permanently enjoined the State of Wyoming from enforcing subsections (c) of the Data Censorship Laws. Order on Mot. for Summ. J. at 24-25, ECF No. 113 ("Summ. J. Order"). Defendants did not appeal this decision.

Plaintiffs then negotiated with State Defendants to try to settle Plaintiffs' claim for attorneys' fees and costs. The parties were unable to reach an agreement. Muraskin Decl. ¶ 50.

## ARGUMENT

### I.      Plaintiffs prevailed and are entitled to recover their reasonable attorneys' fees

Plaintiffs seek to recover their attorneys' fees and costs under 42 U.S.C. § 1988. *See id.* § 1988(b) ("[T]he court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorneys fee as part of the costs[.]"). Congress passed 42 U.S.C. § 1988 to ensure "effective access to the judicial process" for persons with civil rights grievances. H.R. Rep. No. 94-1558, at 1 (1976). The fee-shifting statute enables plaintiffs' counsel to recover a fee "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010). As the Tenth Circuit has noted, "when a plaintiff prevails in a civil rights suit, the plaintiff ordinarily should not have his vindication of these rights eviscerated by an obligation to pay his attorney's reasonable fees." *Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998).

A plaintiff prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Phelps v. Hamilton*, 120 F.3d 1126, 1130 (10th Cir. 1997)

(quoting *Farrar v. Hobby*, 506 U.S. 103, 109, 111-12 (1992)); *see also Hall v. W. Prod. Co.*, 988 F.2d 1050, 1055 (10th Cir. 1993) (holding that a plaintiff prevails if she "has succeeded on any significant issue in litigation which achieved some of the benefits the parties sought in bringing the suit" (internal quotation marks and alterations omitted)).

Plaintiffs indisputably prevailed in this case, successfully arguing that the challenged statutes, which penalized the collection of resource data on public lands, violated the First Amendment. *See* Summ. J. Order at 18-19, 22-24 (discussing how Wyoming's content-based laws do not survive strict scrutiny). By securing a permanent injunction against enforcement of these provisions of the Data Censorship Laws, Plaintiffs vindicated bedrock rights of free speech. An award of reasonable attorneys' fees is warranted. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

## II.     The fee request for the merits stage of the case is reasonable

Plaintiffs' fee request is based on contemporaneous timesheets, calculated according to hourly rates for Wyoming attorneys and excludes time spent on unsuccessful claims and by all but the principal attorneys who litigated the case. The request is reasonable.

To determine the reasonableness of a fee request, a court begins by calculating the lodestar amount, which is the product of the number of attorney hours "reasonably expended" and a "reasonable hourly rate." *Hensley*, 461 U.S. at 433; *accord Phelps*, 120 F.3d at 1131. When the party requesting fees shows that "the claimed rate and number of hours are reasonable, the resulting product is presumed to be a reasonable fee as contemplated by Section 1988." *Robinson*, 160 F.3d at 1281 (internal quotation mark omitted); *see also Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996). Unless plaintiffs' attorneys recover fees for "*all* hours

reasonably expended on the litigation," civil rights plaintiffs may find it difficult to attract competent counsel. *Hensley*, 461 U.S. at 435 (emphasis added).

## A. Plaintiffs' hourly rates are reasonable

A reasonable hourly rate is a rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 & n.11 (1984). The prevailing market rate applies "regardless of whether plaintiff is represented by private or nonprofit counsel." *Id.* at 895; *accord Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 679 (10th Cir. 2012). Courts typically determine the reasonable rate by defining the relevant legal market and then setting reasonable rates for comparably experienced attorneys within that market. *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983). However, in cases involving politically-charged issues that local lawyers may be reluctant to take on and that required special expertise—such as this case—the Tenth Circuit will consider using attorneys' home-market rates. *See id.* Thus, a reasonable rate will vary depending on the nature of the work, the locality in which it is performed, the qualifications of the lawyers, and other criteria. *See id.* The appropriate hourly rate should "reflect rates in effect at the time the fee is being established by the court, rather than those in effect at the time the services were performed." *Id.*; *accord O Centro Espirita Beneficente Uniao Do Vegetal in U.S. v. Duke*, 343 F. Supp. 3d 1050, 1078 (D.N.M. 2018).

Plaintiffs seek fees for the time of ten attorneys who worked on the merits of this case, at the rates listed in the table below, which are drawn from the rates currently used in Wyoming.

| Attorney | Hourly rate |
|---|---|
| David Muraskin (Public Justice) | $335 |
| Neil Levine (Public Justice) | $350 |

6

| | |
|---|---|
| Lucas Rhoads (Public Justice) | $200 |
| Reed Zars (local counsel) | $350 |
| Michael Wall (NRDC) | $350 |
| Margaret Hsieh (NRDC) | $300 |
| Justin Marceau (Univ. of Denver) | $335 |
| Justin Pidot (Univ. of Denver) | $335 |
| Mickey Osterreicher (NPPA) | $335 |
| Alicia Calzada (NPPA) | $300 |

These rates are in line with those awarded by this Court four years ago, and that the State of Wyoming did not dispute were reasonable, in a 2015 fee decision. *See* Order Granting in Part Pls.' Mot. for Att'ys Fees at 4, *Guzzo v. Mead*, No. 14-200 (D. Wyo. Apr. 9, 2015), ECF No. 81 (noting that, while rates were on the higher end for Wyoming's market, "Plaintiffs' out-of-state attorneys reduced their normal hourly rate to more closely match Wyoming's market"). And these rates parallel the rates that the public Jackson Hole Airport Board paid private Wyoming counsel in 2018 for services rendered in 2017-18: $155/hour for a paralegal's time, $225/hour for the time of an attorney who graduated law school in 2015, and $335/hour for attorneys who graduated in 2001 and 1993. Decl. of Bruce Moats ¶ 9 & Exh. B ("Moats Decl."); Wall Decl. ¶ 36 (citing web pages indicating attorneys' graduation years). Plaintiffs are concurrently filing the declaration of Mr. Bruce Moats, who has practiced law in Wyoming, with an emphasis on constitutional law, for more than two decades. Mr. Moats explains that the rates requested by Plaintiffs are consistent with rates that attorneys in Wyoming of similar skill and experience, undertaking specialized litigation, would charge in a constitutional case of this complexity. *Id.* ¶¶ 7-9.

As detailed in their declarations, Plaintiffs' counsel are distinguished, highly experienced litigators with considerable specialized expertise in First Amendment and environmental litigation. *See* Muraskin Decl. ¶¶ 9, 13-19, 31 (detailing his specialized experience in First Amendment and "Ag-Gag" litigation; and co-counsel Neil Levine's 26 years of experience as an environmental litigator and clinical professor); Decl. of Michael Wall ¶¶ 6-13 ("Wall Decl.") (more than 25 years of environmental and First Amendment litigation experience, at the U.S. Department of Justice, in a private firm with a substantial First Amendment practice, and as co-Litigation Director of a national non-profit, where his practice focuses on environmental and constitutional litigation); Decl. of Justin Pidot ¶¶ 7-12 ("Pidot Decl.") (extensive environmental litigation and policy experience at the Department of Justice and as Deputy Solicitor for Land Resources in the Department of the Interior); Decl. of Justin Marceau ¶¶ 4-6 ("Marceau Decl.") (environmental and constitutional law experience, including his role as one of the main architects of Ag-Gag litigation nationwide); Decl. of Reed Zars ¶ 4 ("Zars Decl.") (more than 30 years of environmental litigation practice); Osterreicher Decl. ¶¶ 2-3 (general counsel of National Press Photographers Association since 2005 and of counsel in the Media and First Amendment Practice of a law firm since 2011); Decl. of Alicia Calzada ¶¶ 8, 12 ("Calzada Decl.") (experience representing journalists and news associations in First Amendment matters). The rates they request are within the range of Wyoming market rates for attorneys with similar qualifications and experience.

Notably, none of Plaintiffs' out-of-state counsel seeks a home-market rate, which would have been substantially higher than Wyoming rates. As noted above, courts in this Circuit have awarded higher, out-of-market rates to attorneys in situations similar to this—where the case raised unpopular issues and where attorneys in the community had not demonstrated interest in

taking on such civil rights litigation. *See, e.g.*, *Kersh v. Bd. of Cty. Comm'rs of Natrona Cty.*, 851 F. Supp. 1541, 1544 (D. Wyo. 1994) (listing factors that may justify higher, out-of-market rates, including whether the case raised unpopular issues, required specialized expertise not found in the local market, or where attorneys in the community had not filed and had not shown interest in filing such litigation); *Large v. Freemont County*, No. 05-CV-0270, 2013 WL 12342417, at *3-4 (D. Wyo. Sept. 20, 2013) (awarding $425 hourly rate to out-of-state counsel in voting rights case). In setting the appropriate rate, various courts have held that special expertise may be required in First Amendment cases. *See, e.g., Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014) (finding district court did not abuse its discretion when it "noted the attorneys had expertise in First Amendment litigation, which provided additional support for higher hourly rates"); *O Centro Espirita*, 343 F. Supp. 3d at 1085 (awarding above-market rate because attorney had special experience litigating Religious Freedom Restoration Act cases).

The Wyoming rates sought in this motion are well below what Plaintiffs' counsel would have commanded in their home forums. *See, e.g.*, Wall Decl. ¶ 36 (hourly rate for attorney of comparable experience in San Francisco would be $800 or more); Muraskin Decl. ¶¶ 61-65 (rates for attorneys of comparable experience based in the District of Columbia would be $400 to $800/hour; and rates for Denver-based counsel would be $500 to $550/hour); Pidot Decl. ¶ 18 (Denver rate is $550/hour); Osterreicher Decl. ¶ 14 (attorney's rate at New York-based private firm is $425/hour).

### B.  Plaintiffs seek recovery for a reasonable number of hours

The goal of fee shifting "is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011); *see also INS v. Jean*, 496 U.S. 154, 161-62 (1980) (finding that "fee award[s] presumptively encompass[ ] all aspects of the civil action," and while "the parties'

postures on individual matters may be more or less justified . . . fee-shifting statutes . . . favor[] treating a case as an inclusive whole, rather than as atomized line-items"). Thus, courts "need not, and indeed should not, become green-eyeshade accountants" in evaluating the reasonableness of the hours billed. *Id*. Plaintiffs' counsel maintained detailed, contemporaneous billing records that accurately reflect each lawyer's work on the merits of complex, multi-year case. Muraskin Decl. ¶ 51; Zars Decl. ¶ 5; Pidot Decl. ¶ 16; Wall Decl. ¶ 27; Osterreicher Decl. ¶ 13. The total merits-phase hours for which they seek fees are summarized below, and detailed timesheets are attached as exhibits to the declarations filed in support of this motion.

| Attorney | Hours (reflecting cuts) |
|---|---|
| David Muraskin | 975.2 |
| Neil Levine | 164 |
| Lucas Rhoads | 230.2 |
| Reed Zars | 103.3 |
| Michael Wall | 358.6 |
| Margaret Hsieh | 259.6 |
| Justin Marceau | 17 |
| Justin Pidot | 213.8 |
| Mickey Osterreicher | 46.2 |
| Alicia Calzada | 15.0 |
| **Total hours** | 2,169.1 |

As the declarations show, Plaintiffs took care to staff this case efficiently. For example, Public Justice, which represented Plaintiffs Western Watersheds Project and National Press Photographers Association, seeks fees for no more than two attorneys working on this matter at any given time. Muraskin Decl. ¶ 36. The same is true for plaintiff Natural Resources Defense Council. And while there were multiple attorneys involved for the several separately represented

plaintiffs, that reflects both the need to coordinate among a large coalition of diverse co-litigants, as well as the length of the case, during which time attorneys initially assigned changed jobs, took on other work, and/or left the case. *See, e.g.*, Pidot Decl. ¶ 14; Muraskin Decl. ¶¶ 30-36.

The parties were separately represented, and their separate counsel necessarily had to spend time discussing and harmonizing strategies, and reviewing drafts of jointly-filed pleadings. But that coordination ultimately served efficiency, for had Plaintiffs not coordinated, they would have brought separate lawsuits, driving total attorney hours up, not down. *See* Wall Decl. ¶ 19; *cf. Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (finding time sought by plaintiffs reasonable because it would "reasonably have been billed to a private client"); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 557 (1986) (finding time spent in "optional administrative proceedings" to be "useful and of a type ordinarily necessary to secure the final result obtained from the litigation").

Time spent by local counsel was also necessary. By Local Rule, out-of-state counsel must associate with local counsel before being admitted pro hac vice to appear in this Court. Local Rule 84.2(b). Here, Mr. Zars was required to be as fully prepared as counsel who have been admitted pro hac vice, and to be present in court, unless excused. *See Large*, 2013 WL 12342417, at *6.

As this Court is aware, this case raised novel issues of considerable complexity, each of which were hard fought by Defendants. Thus, the hours spent on this case also reflects the duration, difficulty, and intensity of the litigation, including two motions to dismiss, an appeal, voluminous written discovery, numerous depositions, and cross-motions for summary judgment. Moreover, in a case of this length "a competent lawyer won't rely entirely on last year's, or even last month's, research" — "a lot of legal work product will grow stale" because new "[c]ases are

11

decided; statutes are enacted; [and] regulations are promulgated and amended." *Moreno*, 534 F.3d at 1112.

Nor is it plausible that Plaintiffs' counsel would spend more hours on this case than they felt necessary. Indeed, it would be a "highly atypical civil rights case where a plaintiff's lawyer engages in churning"—spending unnecessary time in hope of inflating their fees—because the "payoff is too uncertain, as to both the result and the amount of the fee." *Id.*

Far from trying to inflate fees, Plaintiffs sought at many junctures to limit costs. For example, after the Tenth Circuit remanded the case to this Court, Plaintiffs tried to initiate settlement discussions, but Defendants declined and instead pursued aggressive discovery. *See* Muraskin Decl. ¶ 47 (noting that the two State Defendants served 240 discovery requests on three Plaintiffs; by comparison, the three Plaintiffs served 56 requests on five Defendants); *see also City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) ("The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by plaintiff in response."). Plaintiffs then attempted to reduce expenses by conducting some depositions via telephone or videoconference, but State Defendants again declined, insisting on in-person depositions throughout the country—including, for example, deposing the National Press Photographers' interrogatory verifier in Buffalo, New York—a deposition that lasted fewer than two hours. *Id.* ¶ 48; *see also id.* ¶ 30 (explaining that Public Justice increased staffing on this matter only on remand, in response to State Defendants' aggressive discovery).

And ultimately, Plaintiffs' counsel's hard work paid off: they won a precedent-setting victory. Although this Court did not "adopt each contention raised" in Plaintiffs' complaint, but Plaintiffs nonetheless obtained substantial relief and are entitled to a full fee award. *M.S. ex rel. J.S. v. Utah Schools for Deaf & Blind*, 882 F.3d 1128, 1138 (10th Cir. 2016) (quoting *Hensley*,

461 U.S. at 440). "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not sufficient reason for reducing a fee." *Hensley*, 461 U.S. at 435. That is the case here: Plaintiffs obtained a precedent-setting result—for the first time in the Tenth Circuit, the court held the First Amendment covers "photograph[ing]" and "note[]" taking of public information. *W. Watersheds Project*, 869 F.3d at 1196.

Through this victory, Plaintiffs secured the core relief they sought since the outset of the case—an injunction against enforcement of civil and criminal prohibitions on certain data collection practices on public lands. *See* Muraskin Decl. ¶ 38. While the Court's decision leaves in place subsections (a) and (b) of the Laws, those provisions apply only to activities on private land, and were never critical to this case, as Plaintiffs never planned to collect resource data on private land. Moreover, although the Court's injunction is limited to subsections (c), that does not make the hours spent on other issues less reasonable, because the legal theories, evidence, and briefing relevant to challenging each of the statutes' subsections were virtually indistinguishable. *See Jane L. v. Bangerter*, 61 F.3d 1505, 1511-12 (10th Cir. 1995) (holding that the district court makes a "qualitative assessment" about plaintiffs' result in a case, and where claims are related, "failure on some claims should not preclude full recovery if plaintiff achieves success on a significant, interrelated claim").

In other words, Plaintiffs' counsel would not have worked materially fewer hours had their complaint initially challenged only subsections (c). And notably, the vast majority of the time for which recovery is sought was spent from the appeal forward—work on which Plaintiffs' victory was complete. Wall Decl. ¶ 33 (showing that 78% of the attorney hours for which

Plaintiffs seek compensation were spent during the appeal and post-appeal phases of the litigation).

Moreover, Plaintiffs have exercised billing judgment and made further downward adjustments to their hours spent. Plaintiffs are not seeking to recover fees for time spent on their preemption claim. As for the time spent on their Petition Clause and Equal Protection claims, those claims plainly arise from related legal theories and a common core of facts as the First Amendment theory on which Plaintiffs prevailed, and for that reason, time spent on those claims is fully recoverable under controlling Supreme Court and Tenth Circuit precedent. *Hensley*, 461 U.S. at 434. Indeed, in a materially similar case, the Tenth Circuit held that, because Due Process Clause, First Amendment, and Equal Protection challenges to a state statute were all "related," no fee reduction was warranted *even though plaintiffs did not prevail on all those claims*. *See Jane L.*, 61 F.3d at 1512.

Plaintiffs' lead attorneys also reviewed all time records and, in a conservative exercise of billing judgment, made a further "good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. For example, Plaintiffs have decided not to seek recovery for their paralegals and law clerks, despite the clear law allowing recovery for such time. *See Missouri v. Jenkins*, 491 U.S. 274, 284-89 (1989). Mr. Marceau is not seeking fees for hundreds of hours of research on legal theories and claims in the lead-up to filing the complaint. Marceau Decl. ¶ 9 (describing time spent, inter alia, speaking with leading constitutional law scholars about theories of the case). Public Justice also made substantial cuts—it excluded all the time (more than 50 hours) of a senior attorney, Leslie Brueckner, even though she provided invaluable strategic input on framing the claims in this case. Muraskin Decl. ¶ 58 (citing the Court's teaching in *Guzzo v. Mead*, No. 14-200, ECF No.

14

81, to limit the number of reviewers of material). Public Justice also excluded all the time of nine attorneys not formally assigned to the matter but who assisted with oral argument preparation and tasks like proofreading, cite checking, and basic research. *See id.* (omitting, inter alia, time spent by the Executive Director, who had billed more than 85 hours to this matter).

In their initial calculations of fees, Plaintiffs determined that after excluding hours they determined were not recoverable, as well as the time of paralegals and law clerks—and before accounting for time spent on fee recovery itself—the preliminary lodestars were as follows:

Public Justice: 253.4 hours from the five most senior attorneys, who each have 18 or more years of experience; 1,110.5 hours by Mr. Muraskin, the primary attorney assigned to the matter and who has ten years of experience; 14.4 hours by four staff attorneys who have 9 to 12 years of experience; 309.2 hours by three entry-level attorneys (then-recent law school graduates); and 19.0 hours by two law clerks (law students). This would have totaled $483,435 in fees.

Natural Resources Defense Council: 404.9 hours by Mr. Wall, co-Litigation Director, who has 26 years of experience; and 310.7 hours by staff attorney Margaret Hsieh, who has 8 years of experience. This would have represented $201,500 in fees.

University of Denver, Sturm College of Law: 319.8 hours from Justin Pidot, lead counsel in this matter from initial filing through the second motion to dismiss (12 years of specialized experience); 20.3 hours from Justin Marceau (14 years of experience); 167.2 hours by law clerks (law students). This would have totaled $127,617.50 in fees.

Reed Zars: 126.1 hours by local counsel for Plaintiffs (30 years of experience), representing $40,982.50 in fees.

National Press Photographers Association: 61.8 hours by Mr. Osterreicher, general counsel for NPPA (18 years of experience); 23.6 hours by NPPA deputy general counsel, Ms. Calzada (8 years of experience). This would have totaled $25,395 in fees.

As noted, Plaintiffs have substantially cut these initial lodestars, eliminating time actually spent by senior attorneys who made important contributions but were not part of the core case team, cutting time from all but one entry-level attorney, and dropping all hours spent on their preemption claim.

On top of these cuts, and in an abundance of caution, Plaintiffs then *further* cut their hours by an additional 10 percent across the board, to account for any potential inefficiency not already addressed by the cuts discussed above. This is a well-recognized method of addressing the potential for redundancy, endorsed by the Tenth Circuit and other courts. *See Latin v. Bellio Trucking, Inc.*, 720 F. App'x 908, 911 (10th Cir. 2017) (unpublished) (applying 10% reduction); *see also, e.g.*, *Moreno*, 534 F.3d at 1112. In total, Plaintiffs made cuts that reduced their total time by nearly one-third.

The table below indicates the amount of time spent by each attorney for which Plaintiffs now seek to recover fees for the merits phase of this case. These figures include the across-the-board 10 percent reduction, and reflect the total recovery appropriate for each individual's time for the merits phase.

| Attorney | Hours | Rate | Fees |
|----------|-------|------|------|
| David Muraskin | 975.2 | $335 | $326,692 |
| Neil Levine | 164 | $350 | $57,400 |
| Lucas Rhoads | 230.2 | $200 | $46,040 |
| Reed Zars | 103.3 | $350 | $36,155 |
| Michael Wall | 358.6 | $350 | $125,510 |

| Margaret Hsieh | 259.6 | $300 | $77,880 |
| Justin Marceau | 17 | $335 | $5,695 |
| Justin Pidot | 213.8 | $335 | $71,623 |
| Mickey Osterreicher | 46.2 | $335 | $15,477 |
| Alicia Calzada | 15.0 | $300 | $4,500 |
| **Total Fees** | | | $766,972 |

## III.    Plaintiffs are entitled to fees for preparing this fee motion

Plaintiffs can also recover for the time spent preparing this fee motion. *See Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1205 (10th Cir. 1986). For work on this motion, Plaintiffs seek fees for the two lawyers primarily responsible for the research and drafting—Vivian Wang (64.2 hours) and Michael Wall (26.6 hours)—at hourly rates of $300 and $350, respectively. Wall Decl. ¶¶ 36-38; Moats Decl. ¶¶ 5,7. As with counsel's hours spent litigating the merits of this case, these figures represent the exercise of billing discretion, excluding time spent preparing declarations in support of this motion, as well as time spent by other Plaintiffs' attorneys' reviewing this draft.

## IV.    Plaintiffs' costs and expenses are reasonable

Along with attorneys' fees, a prevailing party in a civil rights action is normally entitled to expenses under 42 U.S.C. § 1988 and costs under 28 U.S.C. § 1920. *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998) (citing *Jane L.*, 61 F.3d at 1517). Plaintiffs and their counsel incurred expenses of $21,396.24 in this case. Wall Decl. ¶ 43; Muraskin Decl. ¶¶ 67-68. This sum represents necessary out-of-pocket expenses, including legal research costs, copying, printing, discovery fees, and travel. *See generally Case*, 157 F.3d at 1257-58 (listing

Westlaw charges and copying fees as costs and expenses eligible for recovery). The Court should

award these costs and expenses in full.

## CONCLUSION

Plaintiffs respectfully request that the Court award attorneys' fees in the amount of

$795,542 — $766,972 for the merits phase and $28,570 for the fees litigation—plus additional

reasonable fees to be incurred briefing this fee motion on reply—as well as costs and expenses in

the amount of $21,396.24. Given the duration, complexity, and intensity of this litigation, these

fees are fully justified.


April 16, 2019                      Respectfully submitted,

                                    /s/ Michael E. Wall

                                    Michael E. Wall
                                    Natural Resources Defense Council
                                    111 Sutter Street, 21st Floor
                                    San Francisco, CA 94104
                                    (415) 875-6100
                                    mwall@nrdc.org
                                    *Counsel for Natural Resources Defense Council*

                                    Reed Zars
                                    Attorney at Law
                                    910 Kearney Street
                                    Laramie, WY 82070
                                    (307) 745-7979
                                    reed@zarslaw.com
                                    *Counsel for Plaintiffs*

                                    David Muraskin
                                    Leslie A. Brueckner
                                    Public Justice
                                    555 12th St., Suite 1230
                                    Oakland, CA 94607
                                    (510) 622-8205

lbrueckner@publicjustice.net
dmuraskin@publicjustice.net
*Counsel for Western Watersheds Project and*
*National Press Photographers Association*

Justin Marceau
University of Denver Sturm College of Law
(for identification purposes only)
2255 East Evans Ave.
Denver, CO 80208
(303) 871-6000
jmarceau@law.du.edu
*Counsel for Western Watersheds Project and*
*National Press Photographers Association*

Deepak Gupta,
Gupta Wessler PLLC
1735 20th Street, NW
Washington, DC 20009
(202) 888-1741
deepak@guptawessler.com
*Counsel for National Press Photographers*
*Association*

## **CERTIFICATE OF SERVICE**

  I certify that on April 16, 2019, I electronically filed the foregoing with the Clerk of the U.S. District Court of Wyoming using the CM/ECF system which sent a notice of electronic to all counsel of record.


        /s/ Michael E. Wall
        Michael E. Wall