James Kaste, WSB No. 6-3244
Deputy Attorney General
Erik E. Petersen, WSB No. 7-5608
Senior Assistant Attorney General
Wyoming Attorney General's Office
2320 Capitol Avenue
Cheyenne, WY 82002
Telephone: (307) 777-6946
Facsimile: (307) 777-3542
james.kaste@wyo.gov
erik.petersen@wyo.gov

*Counsel for Defendants Bridget Hill and Todd Parfitt*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| WESTERN WATERSHEDS PROJECT; NATIONAL PRESS PHOTOGRAPHERS ASSOCIATION; and NATURAL RESOURCES DEFENSE COUNCIL, | ) ) ) ) ) | |
| *Plaintiffs*, | ) ) ) | |
| v. | ) ) | Civil No. 15-cv-169-S |
| BRIDGET HILL, in her official capacity as Attorney General of Wyoming; TODD PARFITT, in his official capacity as Director of the Wyoming Department of Environmental Quality; PATRICK J. LEBRUN, in his official capacity as County Attorney of Fremont County, Wyoming; JOSHUA SMITH, in his official capacity as County Attorney of Lincoln County, Wyoming; CLAY KAINER, in his official capacity as County and Prosecuting Attorney of Sublette County, Wyoming, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| *Defendants*. | ) | |

## STATE DEFENDANTS' RESPONSE TO
## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION .......................................................................................................... 1

BACKGROUND ............................................................................................................. 1

ARGUMENT ................................................................................................................... 3

    I.      This Court should impose substantial reductions to Plaintiffs' fee and cost demand ................................................................................................................ 4

          A.      Plaintiffs are not entitled to fees related to their challenge to the 2015 statutes ...................................................................................................... 5

          B.      Plaintiffs are not entitled to attorneys' fees associated with their challenges to subsections (a) and (b) .......................................................... 6

          C.      This Court should impose significant reductions to the time related to Plaintiffs' challenge to subsections (c) of the 2016 statutes .................. 8

          D.      Plaintiffs spent an excessive amount of time on many tasks, often engaging in duplicative work ................................................................... 10

          E.      Plaintiffs claim non-compensable time and costs .................................... 14

          F.      The State's Proposal ................................................................................ 14

    II.      Plaintiffs' requested hourly rates are unreasonable ............................................. 15

    III.      This Court does not yet have the information necessary to determine whether Plaintiffs are entitled to "fees on fees."................................................... 18

CONCLUSION............................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Blum v. Stenson,*
    465 U.S. 886 (1984) .......................................................................................................... 15

*Brown v. Phillips Petroleum Co.,*
    838 F.2d 451 (10th Cir. 1988) .................................................................................. 4, 13, 14

*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.,*
    532 U.S. 598 (2001) ......................................................................................................... 5, 6

*Case by Case v. Unified Sch. Dist. No. 233,*
    157 F.3d 1243 (10th Cir. 1998) ...................................................................... 3, 9, 11, 14, 15

*Fox v. Vice,*
    563 U.S. 826 (2011) ........................................................................................................... 13

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ....................................................................................................... 3, 7, 8

*Jane L. v. Bangerter,*
    61 F.3d 1505 (10th Cir. 1995) ......................................................................................... 4, 15

*Malloy v. Monahan,*
    73 F.3d 1012 (10th Cir. 1996) ............................................................................................ 15

*Marek v. Chesney,*
    473 U.S. 1 (1985) ................................................................................................................ 18

*Mares v. Credit Bureau of Raton,*
    801 F.2d 1197 (10th Cir. 1986) .......................................................................... 4, 5, 9, 11, 13

*Rio Grande Silvery Minnow v. BLM,*
    601 F.3d 1096 (10th Cir. 2010) ............................................................................................ 5

*Robinson v. City of Edmond,*
    160 F.3d 1275 (10th Cir. 1998) ......................................................................................... 3, 4

*Ursic v. Bethlehem Mines,*
    719 F.2d 670 (3d Cir. 1983) ................................................................................................ 14

*W. Watersheds Project v. Michael,*
    No. 15-cv-169-SWS, 2016 WL 3681441 (D. Wyo. July 6, 2016) ....................................... 2

**Statutes**

Wyo. Stat. Ann. § 6-3-414 ..................................................................................... 1, 2

Wyo. Stat. Ann. § 40-27-101 ................................................................................. 1, 2

**Other Authorities**

13C Charles Alan Wright et al., *Federal Practice and Procedure § 3533.6* (3d ed),
    Westlaw (database updated Apr. 2016) ................................................................ 5

2 John Schwartz and Martin A. Kirklan, *Section 1983 Litigation: Statutory Attorney's
    Fees* 189 (3rd ed.) ............................................................................................... 14

28 U.S.C. § 1920 ...................................................................................................... 3

42 U.S.C. § 1988 ...................................................................................................... 3

## INTRODUCTION

Following motions practice in this case, Plaintiffs prevailed on a portion of one of their claims, while this Court dismissed the remainder of the case for failure to state a claim. Specifically, this Court found that subsections (c) of Wyoming's 2016 trespass statutes violate the First Amendment. Accordingly, Plaintiffs are entitled to recover reasonable attorneys' fees and costs related to their challenge to subsections (c). Plaintiffs seek far more than that.

Plaintiffs ask this Court to award them $766,972 in attorneys' fees and $21,396 in costs for their partial success on the merits. In support, Plaintiffs claim that, even after exercising billing judgment, they are entitled to recover nearly 2,400 hours at rates that are well above what comparable attorneys charge in the relevant legal market. Plaintiffs' demand is unreasonable. It includes time spent on Plaintiffs' original challenge to the 2015 trespass laws, which is not compensable because Plaintiffs did not obtain a judicially-sanctioned change in the law. Plaintiffs also seek to recover fees for time spent unsuccessfully challenging subsections (a) and (b) of the 2016 trespass laws. This Court should not compensate Plaintiffs for their time spent on these challenges because they had absolutely no success against these subsections. Plaintiffs also demand compensation for time spent unnecessarily on their challenge to subsections (c). This is improper. Lastly, Plaintiffs seek hourly rates that are unreasonable in this market. Based on all of these factors, the State of Wyoming asks this Court to award Plaintiffs no more than $300,000 in taxpayer dollars for Plaintiffs' limited success in this case.

## BACKGROUND

In 2015, the Wyoming Legislature enacted two statutes intended to discourage unauthorized trespass by individuals motivated by a desire to collect "resource data." Wyo. Stat. Ann. §§ 6-3-414 and 40-27-101 (2015). On September 29, 2015, Plaintiffs filed a lawsuit alleging

that the 2015 statutes violated: the Petition Clause; the Freedom of Speech Clause; the Supremacy Clause; and the Equal Protection Clause of the United States Constitution. (ECF_1). The following month, the State moved to dismiss the lawsuit for failure to state a claim upon which relief can be granted. (ECF_28). This Court granted the motion in part and denied it in part, including the dismissal of Plaintiffs' Supremacy Clause claim. (ECF_40). In early 2016, the Legislature amended the 2015 trespass statutes, and the Governor signed the amendments into law, thereby superseding the 2015 trespass statutes and creating two new statutes in their place. Wyo. Stat. Ann. §§ 6-3-414 and 40-27-101 (2016). The 2016 trespass statutes provide for three categories of violations, each contained within a separate subsection – (a), (b) and (c). *Id.*

In response to the Legislature's enactment of the new trespass statutes, Plaintiffs amended their complaint to challenge the 2016 trespass laws. (ECF_54). They abandoned their Petition Clause claim and narrowed the lawsuit's focus to their Freedom of Speech and Equal Protection claims. (*Id.*). On May 3, 2016, the State moved to dismiss Plaintiffs' amended complaint for failure to state a claim upon which relief can be granted. (ECF_58). Shortly thereafter, this Court granted the motion and dismissed the case. *W. Watersheds Project v. Michael,* No. 15-cv-169-SWS, 2016 WL 3681441 (D. Wyo. July 6, 2016); (ECF_64).

Plaintiffs appealed. (ECF_68). In so doing, they chose to limit the scope of their appeal to this Court's determination that their First Amendment claim against subsection (c) of Wyoming Statute § 6-3-414 (2016) and subsection (c) of Wyoming Statute § 40-27-101 (2016) failed to state a claim upon which relief can be granted. (*See* ECF_122 at 3). Plaintiffs therefore abandoned all of their challenges to subsections (a) and (b) of the 2016 trespass laws. (*Id.*). They also abandoned all of their arguments under the Equal Protection Clause. (*Id.*).

The Tenth Circuit Court of Appeals subsequently reversed this Court's decision with regard to subsections (c) and remanded the matter back for further proceedings. (ECF_122 at 3). Given the scope of Plaintiffs' appeal, the Tenth Circuit naturally made no ruling on any portion of the 2016 trespass laws other than subsections (c). On remand, this Court found that subsections (c) of the 2016 trespass laws violate the First Amendment. (ECF_113). Wyoming did not appeal. Plaintiffs now seek attorneys' fees and costs. (ECF_121).

## ARGUMENT

Plaintiffs brought their suit under 42 U.S.C. § 1983. (ECF_1; ECF_54). In such a suit, a plaintiff that prevails "on any significant issue" is entitled to reasonable attorneys' fees and costs. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998); 42 U.S.C. § 1988; 28 U.S.C. § 1920. "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Case by Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998) (citation omitted). "Once the district court has adequate time records before it, it must then ensure that the winning attorneys have exercised 'billing judgment.'" *Id*. at 1250 (citation omitted). "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended. Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable." *Id*. at 1250. Among the factors for this Court to consider are:

> (1) whether the tasks being billed "would normally be billed to a paying client," (2) the number of hours spent on each task, (3) "the complexity of the case," (4) "the number of reasonable strategies pursued," (5) "the responses necessitated by the

maneuvering of the other side," and (6) "potential duplication of services" by multiple lawyers.

*Robinson*, 160 F.3d at 1281. This type of inquiry "is controlled by the overriding consideration of whether the attorney's hours were 'necessary' under the circumstances." *Id*.

Ultimately, "[t]o determine a reasonable attorneys['] fee, the district court must arrive at a 'lodestar' figure by multiplying the hours plaintiffs' counsel reasonably spent on the litigation by a reasonable hourly rate." *Jane L. v. Bangerter*, 61 F.3d 1505, 1509 (10th Cir. 1995). "An award of attorneys' fees is a matter uniquely within the discretion of the trial judge who has intimate knowledge of the efforts expended and the value of the services rendered." *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 453 (10th Cir. 1988) (internal quotations omitted).

I.    **This Court should impose substantial reductions to Plaintiffs' fee and cost demand.**

The State does not dispute that Plaintiffs prevailed on their challenge to subsections (c) of the 2016 trespass laws and that they are entitled to reasonable attorneys' fees and costs attributable to that challenge. But, as the State will discuss, Plaintiffs' request for nearly $800,000 in attorneys' fees and costs far exceeds what is reasonable to compensate Plaintiffs for their limited success in this litigation. This Court should impose substantial reductions to Plaintiffs' fee and cost demand because: (A) they are not entitled to any fees or costs related to their challenge to the 2015 trespass statutes; (B) they are not entitled to any fees or costs related to their challenge to subsections (a) and (b) of the 2016 trespass statutes; (C) a demand for nearly $800,000 in this market shocks the conscience; (D) in many instances, the time spent by Plaintiffs was excessive and/or duplicative; and (E) some claimed time and costs are not compensable.

When it comes to the reasonableness of individual billing entries, "no objective standard exists to resolve a dispute" about the amount of hours claimed. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir. 1986). "A lawyer may insist the time was necessary, while a court,

based upon experience and judgment, including knowledge of the case itself, may declare half the time to have been necessary." *Id.* at 1202-03. The Tenth Circuit recognizes that imposing individualized, line-by-line reductions to billing entries can be an "odious" process. *Id.* at 1203. Accordingly, "[a] general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use." *Id.* The Tenth Circuit likened this "process to a senior partner in a private law firm scrutinizing and adjusting time reported by subordinates." *Id.* "As anyone who has been in private practice well knows, for billing purposes such adjustments can take many forms, including a general write-down of total hours logged." *Id.* A substantial "general write-down" is appropriate here. *See id.*

### A.    Plaintiffs are not entitled to fees related to their challenge to the 2015 statutes.

Plaintiffs originally challenged the 2015 trespass statutes. (ECF_1). After this Court expressed concern with the legality of those statutes, the Wyoming Legislature amended them, thereby creating the 2016 trespass statutes. This legislative action rendered Plaintiffs' original complaint moot.[1] In order to continue their lawsuit, Plaintiffs filed an amended complaint to challenge the 2016 statutes. (ECF_54).

In a case brought under 42 U.S.C. § 1983, a plaintiff is only entitled to recover attorneys' fees and costs related to a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001).

---

[1] Plaintiffs' challenge to the 2015 statutes was (and is) moot because the 2015 laws have been superseded by legislative action. *See* 13C Charles Alan Wright et al., *Federal Practice and Procedure* § 3533.6 (3d ed), Westlaw (database updated Apr. 2016). And the voluntary cessation exception does not apply. *See Rio Grande Silvery Minnow v. BLM*, 601 F.3d 1096, 1117 (10th Cir. 2010).

The Supreme Court rejected the contention that a plaintiff is entitled to attorneys' fees merely by being a "catalyst" for change in a § 1983 case. *Id*. Therefore, all of the work conducted prior to Plaintiffs' filing of the amended complaint is non-compensable because the relief sought and obtained under the original complaint, rescission of the 2015 trespass laws, came from the Wyoming Legislature, not the federal district court. *Id*. This covers the "Complaint" phase and the "First Motion to Dismiss" phase of the litigation, which account for approximately 410 hours of Plaintiffs' claimed time. (Ex. A – Yellow and Green Highlights).[2] The State asks this Court to reduce Plaintiffs' overall fee request to account for these hours, which did not result in a "judicially sanctioned change." *Buckhannon*, 532 U.S. at 605.

> **B.      Plaintiffs are not entitled to attorneys' fees associated with their challenges to subsections (a) and (b).**

When Plaintiffs challenged the now superseded 2015 trespass statutes, and when they amended their complaint to challenge the 2016 trespass statutes, they challenged the constitutionality of subsections (a), (b), and (c). (ECF_1 at 51-67; ECF_54 at 51-55). When this Court dismissed Plaintiffs' amended complaint for failure to state a claim, Plaintiffs limited their appeal to subsections (c). (*See* ECF_122 at 3). In an attempt to puff up the significance of their subsequent success with regard to subsections (c) and downplay their lack of success on all of their other arguments, Plaintiffs now state that their challenges to subsections (a) and (b) "were never critical to this case." (ECF_122 at 13). This is belied by Plaintiffs' original and amended complaints, which claimed that subsections (a) and (b) chilled Plaintiffs from engaging in data collection. (*See, e.g.*, ECF_1 at ¶ 64; ECF_54 at ¶ 79). But if true, Plaintiffs wasted the Court's

---

[2] In Exhibit A, the State collected Plaintiffs' contemporaneous billing records into a single document for ease of reference. Plaintiffs' records identify each billing entry by "phase" of the litigation. The State has color-coded these phases in Exhibit A and will refer to the color codes herein.

time and the State's time by challenging subsections (a) and (b) in the first place. The State prepared two motions to dismiss based largely on Plaintiffs' challenges to subsections (a) and (b). (ECF_28, 58). This Court twice analyzed the viability of Plaintiffs' challenge to these subsections. (ECF_40, 64). Now, Plaintiffs tell this Court that these challenges, which took up so much of the Court's time and the State's time, were unimportant and, indeed, perhaps not even justiciable. (ECF_122 at 13). But they do expect to be paid for their work on those unsuccessful (and apparently unimportant) challenges. (ECF_122).

Because Plaintiffs did not maintain contemporaneous billing records with sufficient detail to segregate time spent challenging subsections (a) and (b) from time spent challenging subsections (c), they argue that this Court must require the State to pay for all of their time. (ECF_122 at 13). Not so. This Court can impose an across-the-board cut to account for the time that this Court and all parties wasted on claims that Plaintiffs never should have brought before this Court and on which Plaintiffs achieved no success.[3] *See, e.g., Hensley*, 461 U.S. at 436. The State requests that this Court reduce Plaintiffs' total fee demand to account for the wasted time related to Plaintiffs' completely unsuccessful challenges to subsections (a) and (b). Such a reduction would address

---

[3] In some cases, courts will award attorneys' fees related to an unsuccessful claim because the plaintiff achieved an "excellent" result via a related claim. *Hensley*, 461 U.S. at 440. But that assumes some level of success. *Id*. Plaintiffs achieved **no** success with regard to subsections (a) and (b), and they should not be compensated for the time spent on those claims. By contrast, Plaintiffs can more reasonably argue that they are entitled to be compensated for their unsuccessful claims against subsections (c), specifically their Equal Protection arguments against subsections (c), given their ultimate success against subsections (c) via their First Amendment claim. Whether this Court decides to compensate Plaintiffs for these unsuccessful claims and arguments depends on whether this Court believes that Plaintiffs' success on their First Amendment claim against subsections (c) is so "excellent" that Plaintiffs deserve to be compensated for their time spent on their unsuccessful claims against subsections (c). *Hensley*, 461 U.S. at 440. But this Court should reject the time spent on subsections (a) and (b) as not compensable because there was no success whatsoever. *Id*.

Plaintiffs' wasteful behavior, and is fully within this Court's discretion, so long as this Court explains its rationale. *See Hensley*, 461 U.S. at 436-37. It would also send a message that this Court will not look kindly upon such waste by plaintiffs in future suits.

Assuming that this Court declines to compensate Plaintiffs for any of the time spent prior to the filing of the First Amended Complaint, *supra* at 5-6, Plaintiffs' time spent on subsections (a) and (b) is largely tied to the "First Amended Complaint" phase and the "Second Motion to Dismiss" phase. (Ex. A – Orange and Blue Highlights). Plaintiffs assert it took over 79 hours and seven attorneys to prepare their First Amended Complaint. (Ex. A – Orange Highlights). This is excessive, particularly because Plaintiffs were working off of an existing complaint. With that said, if this Court does not credit Plaintiffs with the time spent on their original complaint, as the State requests, then the State does not object to this time.

Plaintiffs claim 91 hours for their work on the second motion to dismiss. (Ex. A – Blue Highlights). This includes nearly 51 hours by the attorney who drafted the response to the motion to dismiss, with the balance of the time claimed by six other attorneys, who reviewed and edited the draft prepared by the author. (*Id.*). That is excessive. Moreover, a significant portion of that time was spent responding to the State's arguments related to subsections (a) and (b), which should be denied, as already discussed. The State suggests a reduction of 50% to account for the unsuccessful challenge to subsections (a) and (b) (a reduction of 45.5 hours). If this Court discounts Plaintiffs' time to address the unsuccessful work on subsections (a) and (b), as the State requests, then the State does not object to the time that remains for this phase of the litigation.

**C.     This Court should impose significant reductions to the time related to Plaintiffs' challenge to subsections (c) of the 2016 statutes.**

While Plaintiffs are entitled to recover reasonable attorneys' fees related to their challenge to subsections (c) of the 2016 trespass laws, this Court should impose substantial cuts to the amount

of hours that Plaintiffs claim. Federal courts will sometimes engage in a line-item review of the billing records, but a "general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use." *Mares*, 801 F.2d at 1203.

While this case did involve an interesting application of the First Amendment, it hardly raised complex issues. Rather, the case was resolved via a fairly straight-forward application of First Amendment law. (*See* ECF_113). Ultimately, the Court disposed of this case via a motion to dismiss and a motion for summary judgment. (ECF_64; ECF_113). The case did not require any trial time, and the scope of discovery was limited.[4] (*See id.*). Nevertheless, Plaintiffs have claimed nearly 2,400 hours of work by ten attorneys, all of whom they allege are experts in their field. (ECF_122). It is unreasonable to think that a paying client in Casper would accept a bill that essentially amounts to more than a **full year** of work **by a partner** on this one case. And if Plaintiffs could not bill this much time to a client, it is "presumptively unreasonable." *Case by Case*, 157 F.3d at 1250.

The undersigned handled this case more or less exclusively for the State, while simultaneously supervising the State's natural resource lawyers, representing Wyoming in a number of federal natural resource cases around the country, including several before Judge

---

[4] Plaintiffs suggest that the State imposed a heavy discovery demand by propounding "nearly 240 interrogatories and document requests on Plaintiffs." (ECF_122 at 3). This number does not present an accurate picture. First, the State sent its more or less identical requests to each of the three plaintiffs, so the overall number is inflated by two-thirds. Second, a cursory review of the discovery requests shows that the number of requests is inflated by separately broken out document requests. (*See* Ex. B). At bottom, the real picture is that the State propounded roughly 21 interrogatories, 18 requests for document production, and a request that Plaintiffs produce the documents that either supported Plaintiffs' interrogatory responses or that the Plaintiffs relied upon in responding. The fact that the State broke these requests out for clarity and sent them to each plaintiff does not mean the State engaged in excessive discovery.

Skavdahl, and providing advice to state agency clients and the Governor's office. His time spent on this case did not remotely approach 2,400 hours. This is particularly notable, because the undersigned, unlike all ten of Plaintiffs' attorneys, does not claim to be an expert in First Amendment law. At bottom, a demand for nearly $800,000, based on nearly 2,400 hours claimed, in a case like this one, shocks the conscience in a legal market like Casper, and the State asks this Court to impose an across-the-board reduction to account for this fact.

### D. Plaintiffs spent an excessive amount of time on many tasks, often engaging in duplicative work.

Despite Plaintiffs' assertion that they have already exercised proper billing judgment with regard to their fee request, Plaintiffs' contemporaneous billing records show that they routinely billed excessive time, often engaging in unnecessary and duplicative work. While there are certainly individual examples of questionable billing judgment throughout Plaintiffs' records,[5] the most efficient way to examine the reasonableness of the time claimed is to review how much time Plaintiffs spent on each phase of the litigation. When doing so, the Court must keep in mind one overarching theme: Plaintiffs contend that it is reasonable for four (or more) attorneys, each of whom purports to be an expert in First Amendment law and each of whom requests a billing rate equivalent to a partner at Holland & Hart, to work on a single project, like a summary judgment brief. (*See* Ex. A). That does not include the time spent by local counsel. (*Id.*). That amount of effort is excessive, duplicative, unnecessary and unreasonable.

---

[5] One example is that of Ms. Hsieh on December 29, 2016. (Ex. A at 57). On that day alone, Ms. Hsieh spent over **fifteen hours editing a reply brief** authored by Mr. Muraskin, an "expert" in First Amendment cases. That is fifteen hours spent in just one day on a document she did not draft, that cannot by its nature raise new arguments, and which was not due for nearly three more weeks. (*See id.*). And once she tacked on another 2.7 hours "going through emails," all purportedly related to this case, her one day total on December 29 came to a whopping 17.9 hours. (*Id.*).

Plaintiffs contend that they are actually **saving** money by using this approach, arguing that the other option would be for the plaintiff group in this case to each pursue individual cases. (ECF_122 at 11). By this logic, a plaintiff can justify having at least two more lawyers review every filing, in fine detail, for each new plaintiff added to the caption.  This does not hold water. As this Court has held, it is reasonable to have a primary drafter, a reviewer, and local counsel participate in preparing a filing. (Ex. C at 7).[6] Here, Plaintiffs regularly used two or more additional attorneys in each review process. (Ex. A). And their review was not cursory. Often, these other attorneys put in enough "editing" time to have completely re-written the brief.

Plaintiffs contend that they are not capable of "churning" in a case such as this one. (ECF_122 at 12). A review of each individual attorney's billing records shows that to be untrue. Perhaps it was unintentional, but it certainly occurred. A review of Plaintiffs' contemporaneous billing records reveals instances of work that are duplicative, excessive, unnecessary, and unreasonable. (Ex. A). This Court should impose substantial reductions to address these issues. *See, e.g., Case by Case*, 157 F.3d at 1250.

Below, the State will summarize the amount of time Plaintiffs spent on each phase of the litigation. As the Court will see, the sheer amount of time that Plaintiffs have claimed for each discrete phase of the litigation shows that their fee demand is unreasonably excessive. A substantial "general write-down" is therefore appropriate.[7] *Mares*, 801 F.2d at 1203.

---

[6] As this Court explained in 2015, "reviewing and editing a document by one attorney in the same law firm as the document's drafter . . . [is] . . . necessary and appropriate. Additionally, review and revision by . . . local counsel . . . [is] . . . necessary and appropriate. Reviewing and editing or revising beyond those attorneys, however, [is] duplicative, excessive, unnecessary, and unreasonable, and therefore will be disallowed." (Ex. C at 7).

[7] Plaintiffs' contemporaneous billing records show that they claim 2,647 hours of work on this case. (Ex. A). In a purported attempt to address inefficiencies, Plaintiffs applied a 10% reduction to their overall claim. (ECF_122 at 16). This would result in a total of 2,383 hours. In the

The State already discussed suggested reductions to Plaintiffs' time expended prior to the appeal. *Supra* at 5-8. At the time of the appeal, David Muraskin took over lead counsel responsibilities from Justin Pidot. (ECF_122-2 at 6). It is at this point that the hours claimed really take off. (*See generally* Ex. A). As a reminder, Plaintiffs had already briefed the issues on appeal before this Court. The appeal did not follow a trial that raised new issues. Instead, the appeal merely required Plaintiffs to reframe the arguments that they already developed and drafted at the district court level. Plaintiffs' claimed hours are simply unreasonable.

For example, Plaintiffs argue that they are entitled to be compensated for nearly 453 hours of work on their appeal. (Ex. A – Pink Highlights). Mr. Muraskin, the author of Plaintiffs' opening and reply briefs, claims nearly 352 hours for his efforts. (*Id.*). Two attorneys from the Natural Resources Defense Council claim almost 72 hours of work on briefs that they did not author. (*Id.*). Four more lawyers account for another 25 hours. (*Id.*). That is an excessive amount of time to spend on an appeal of the dismissal of a portion of a single claim. The fact that Plaintiffs' local counsel conducted his review of the briefs in 3.8 hours highlights this fact. (*Id.*).

A paying client in Casper would not pay the equivalent of one-quarter of a law firm partner's billable time in a given year on such a straight-forward appeal, nor would a paying customer accept eight attorneys working on such a filing. Indeed, one suspects that, not only would the client refuse to pay, the client would seek different legal representation. The State asks this

---

memorandum in support of their motion, Plaintiffs state that the total amount of hours claimed is 2,169. (ECF_122 at 10). Plaintiffs' math is wrong, as is evidenced by a table they provided. (ECF_122 at 16-17). For reasons that are unclear, Plaintiffs did not calculate a total of the hours claimed in this table, but it shows that their request for $766,972 is supported by a claim of 2,383 hours, not 2,169. (*Id.*). Below, when the State discusses the amount of time claimed for a particular "phase" of the case, the number reflects the amount of hours recorded in the contemporaneous billing records provided by Plaintiffs, minus their self-imposed 10% reduction.

Court to impose a substantial reduction to this amount based on the Court's experience with such matters. *Brown*, 838 F.2d at 453. The State suggests that the Court consider **at least** a 50% reduction, which would still compensate Plaintiffs for over 226 hours of work on the appeal.

Plaintiffs claim that they spent approximately 617 hours on discovery in this case. (Ex. A – Purple Highlights). It is almost impossible for the State to decipher what portion of this time is compensable. *See Mares*, 801 F.2d at 1202-03. For example, Plaintiffs assert that it took them approximately 210 hours to respond to the State's discovery. (*Id.*). Given the limited scope of the State's requests, this seems excessive. *See supra* at n.4. Certainly, Plaintiffs needed to spend some time responding to the State's interrogatories and requests for production. But the amount of documents provided to the State in response to its document requests was fairly small in scope – it can be measured by how many redweld folders the documents filled, not how many banker's boxes. Based on the inefficiencies replete in other phases of the litigation, the State asks this Court to impose some "rough justice" and reduce Plaintiffs' discovery time by at least a modest 20%. *Fox v. Vice*, 563 U.S. 826, 838 (2011).

Plaintiffs argue that they are entitled to be compensated for **710** hours spent on briefing their challenge to subsections (c) via summary judgment. (Ex. A – Gray Highlights). The author of the summary judgment briefs claims that he should be paid for 423 hours spent preparing the briefs, which totaled 58 pages. (ECF_96, 103, 106). Despite Mr. Muraskin's alleged expertise, he felt it necessary for a more junior attorney at his firm to spend nearly 142 hours on the summary judgment phase. (*Id.*). A third attorney at this same firm claims over 25 hours on this phase. (*Id.*). Then, four attorneys outside of that firm spent another 102 hours on the effort. (*Id.*). All while Plaintiffs' local counsel claimed less than 6 hours for this phase of the litigation. (*Id.*). Apart from Plaintiffs' local counsel, this amount of time shows a wild amount of duplication and unnecessary

work. The State asks this Court to impose a substantial reduction to the requested amount, based on the Court's experience with such matters. *Brown*, 838 F.2d at 453. The State suggests that the Court consider **at least** a 50% reduction, which would still compensate Plaintiffs for over 350 hours of work on the summary judgment briefs, a staggering amount of hours for summary judgment briefing in a case such as this one, which was not fact-intensive.

### E.  Plaintiffs claim non-compensable time and costs.

Plaintiffs claim time related to a number of non-compensable tasks. (Ex. A). Among these tasks are: time spent on self-education, the preparation of internal memoranda, familiarization with the law, "learning time" of replacement attorneys, maintenance of time records and calendars, conference time, and media-related efforts. *See* 2 John Schwartz and Martin A. Kirklan, *Section 1983 Litigation: Statutory Attorney's Fees* 189 (3rd ed.). It also includes instances where an attorney's billing entry would not satisfy a paying client.[8] *Case by Case*, 157 F.3d at 1250; *see also Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983). Lastly, it includes costs related to phases of the litigation where Plaintiffs should not be compensated for reasons already discussed. (Ex. D). Rather than ask this Court to review 2,647 hours of claimed time and the associated costs line by line, a task the State performed, the State urges this Court to impose the general reductions already discussed.

### F.  The State's Proposal

Based on the discussion above, the State suggests that, at a minimum, this Court impose the following cuts to Plaintiffs' claimed time:

---

[8] For example, on November 10, 2016, Ms. Hsieh spent over 16 hours "reviewing draft brief." (Ex. A. at 56). This was after she had already spent 9 hours "reviewing" the same brief the week before. (*Id.*). Note that this is wholly separate from Ms. Hsieh's 18 hour day reviewing a different brief that she also did not author. *Supra* at n.5.

| Phase of Litigation | Amount Requested | Amount Reduced | Amount Awarded |
|---|---|---|---|
| Original Complaint | 243 hours | 243 hours | 0 hours |
| 1st Motion to Dismiss | 166.8 hours | 166.8 hours | 0 hours |
| 1st Am. Complaint | 79 hours | 0 hours | 79 hours |
| 2d Motion to Dismiss | 91 hours | 45.5 hours | 45.5 hours |
| Appeal | 453 hours | 226.5 hours | 226.5 hours |
| Discovery | 617 hours | 123 hours | 494 hours |
| Summary Judgment | 710 hours | 355 hours | 355 hours |
| Miscellaneous | ~23 hours | 0 hours | ~23 hours |
| TOTALS | ~2,383 hours | ~1,160 hours | ~1,223 hours |

## II.     Plaintiffs' requested hourly rates are unreasonable.

In order to arrive at an award of attorneys' fees, this Court must also examine the hourly

rates that Plaintiffs claim in order to determine whether or not they are reasonable. *Bangerter*, 61

F.3d at 1509. A reasonable hourly rate is one "prevailing in the community for similar services by

lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S.

886, 895 n.11 (1984). "Because the district court 'is uniquely qualified to establish the reasonable

hourly rate multiplier in computing attorneys' fees,' [the Tenth Circuit] give[s] great deference to

it factual findings." *Malloy v. Monahan*, 73 F.3d 1012, 1019 (10th Cir. 1996) (citation omitted).

With that said, the Court cannot ignore the market rate evidence provided by Plaintiffs. *See Case

by Case*, 157 F.3 at 1255.

For nine out of its ten attorneys, Plaintiffs claim hourly rates at or above $300. (ECF_122

at 16-17). According to a 2017 study by the Wyoming State Bar, only 17 percent of attorneys in

Wyoming charge more than $250 per hour, and only 8 percent charge more than $300 per hour.

(ECF_122-3 at 38). Logic suggests that this top 8 percent are likely to be law firm partners or similar. Plaintiffs nevertheless claim that these nine attorneys, the most junior of whom only has five years of experience, are all entitled to rates of $300 or more. (ECF_122 at 16-17). These rates are excessive for the relevant legal market. Accordingly, this Court should reduce the hourly rates when conducting the lodestar analysis.

By far, the most meaningful evidence of market rates that Plaintiffs provide is the Declaration of Bruce Moats. (*See* ECF_122-3). As this Court is no doubt aware, Mr. Moats is an experienced Wyoming litigator. He has 22 years of experience, a substantial amount of which involved (and involves) issues related to the First Amendment and constitutional law. (*See, e.g.*, ECF_122-3 at ¶ 2). Mr. Moats, who submitted an *amicus* brief in this litigation, believes that rates as high as $350 are "in line with what attorneys in Wyoming … charge" in a First Amendment case such as this one. (*Id*. at ¶ 7). In support of his opinion, Mr. Moats essentially only offers a single data point – the fact that attorneys in the Jackson office of the law firm Holland & Hart once charged similar rates when representing the Jackson Hole Airport Board. (*Id*. at ¶ 9). But this Court is well aware that this example screams "outlier." Holland & Hart is not representative of the rates typically charged in Wyoming. And Jackson is certainly not representative of Casper, where this case resides.

Fortunately, Mr. Moats provides a far more useful comparison than this one outlier – his own rates in civil rights cases. (*Id*. at ¶ 4). Mr. Moats' "current hourly rate for civil rights cases is between $175 and $250 per hour[.]" (*Id*.). The State can corroborate this testimony because it recently paid an attorney fee award to Mr. Moats according to an hourly rate in his stated range. And while Mr. Moats says that he believes his rates are low, he provides no evidence other than the outlier example from Jackson to support that statement. (ECF_122-3). It is the undersigned's

experience that attorneys charge the highest rate that the market will bear. According to Plaintiffs'

declarant, Mr. Moats, that is a range of $175 to $250 per hour. (*Id*. at ¶ 4). The State suggests the

Court adopt the following rates for Plaintiffs' attorneys, which are based on Mr. Moats' actual

billing rates instead of unsupported speculation about what others might charge:

| Attorney | Experience | Hourly Rate |
|---|---|---|
| David Muraskin | ~10 years | $220 per hour |
| Neil Levine | ~26 years | $250 per hour |
| Lucas Rhoads | ~2 years | $175 per hour |
| Michael Wall | ~26 years | $250 per hour |
| Margaret Hsieh | ~8 years | $215 per hour |
| Justin Marceau | ~5 years | $185 per hour |
| Justin Pidot | ~13 years | $230 per hour |
| Mickey Osterreicher | ~21 years | $250 per hour |
| Alicia Calzado | ~9 years | $210 per hour |
| Reed Zars | ~33 years | $250 per hour |

To be clear, these rates would recognize each attorney as being as much of an "expert" in

First Amendment law as Mr. Moats is. For the record, however, only half of Plaintiffs' ten

attorneys actually have expertise in this field. (ECF_122 at 8). The rest argue that their alleged

expertise in environmental cases should translate to the field of First Amendment law, which is a

dubious assertion at best.[9] But seeing as Plaintiffs' attorneys typically bill higher rates in their

---

[9] The undersigned has fifteen years of experience in the field of environmental law and litigation, including four and a half years at a national law firm in Washington, D.C. and over six years at the

home districts, the State is willing to consider all of them entitled to an "expert" hourly rate somewhere within Mr. Moats' current range of billing rates ($175 to $250). As experts, of course, they should be extremely efficient, which is not reflected in their billing records.[10] For the purposes of rough calculations, the State suggests a blended billing rate of $230 per hour.

## III.   This Court does not yet have the information necessary to determine whether Plaintiffs are entitled to "fees on fees."

As part of the relief requested, Plaintiffs ask this Court to award them attorneys' fees for their work on the attorney fee dispute. (ECF_122 at 17). But Plaintiffs are only entitled to such fees when their decision to litigate the fee issue, rather than settle it, is justified. *Marek v. Chesney*, 473 U.S. 1, 5 (1985). Such a decision is not justified when the amount awarded is less than an offer of judgment to settle the dispute without litigation. *Id.* In the course of settlement negotiations on the attorney fee and cost issue, the State presented Plaintiffs with an offer of judgment, which they rejected. Accordingly, it remains to be seen whether Plaintiffs' decision to reject the offer and litigate the attorney fee issue was justified. Once this Court determines reasonable compensation for Plaintiffs' limited success on the merits litigation, the parties can then inform the Court whether the amount awarded is greater than or less than the State's offer of judgment, which will inform what is appropriate with regard to Plaintiffs' demand for "fees on fees."

---

Department of Justice. He found very little of that specialized expertise to be a benefit in this First Amendment case.

[10] Plaintiffs imply that they are entitled to higher rates because attorneys in Wyoming are reluctant to take a case such as this one. (*E.g.*, ECF_122 at 6). They provide no evidence of such reluctance, however, which Mr. Moats could easily have provided in his testimony, if it were true. And Mr. Zars' participation in this case also belies Plaintiffs' attempt to obliquely suggest that alleged reluctance by Wyoming attorneys to engage in this litigation is at all relevant to this fee dispute.

## CONCLUSION

The State does not dispute that Plaintiffs are entitled to a reasonable award tied to their challenge to subsections (c) of the 2016 trespass laws. But Plaintiffs' request for nearly $800,000 of taxpayer dollars is far from reasonable. For the reasons discussed above, the State asks this Court to award Plaintiffs no more than $300,000.

Submitted May 8, 2019.

/s/ Erik Petersen
James Kaste, WSB No. 6-3244
Deputy Attorney General
Erik E. Petersen, WSB No. 7-5608
Senior Assistant Attorney General
2320 Capitol Avenue
Cheyenne, WY 82002
Telephone: (307) 777-6946
Facsimile: (307) 777-3542
james.kaste@wyo.gov
erik.petersen@wyo.gov

*Counsel for Defendants Bridget Hill and Todd Parfitt*

## CERTIFICATE OF SERVICE

I certify that on the 8th day of May 2019, I electronically filed the foregoing with the Clerk of the U.S. District Court of Wyoming using the CM/ECF system, which sent a notice of electronic filing to all counsel of record.

*/s/ Erik Petersen*
Erik E. Petersen