Reed Zars
Wyo. Bar No. 6-3224
Attorney at Law
910 Kearney Street
Laramie, WY 82070
(307) 745-7979
reed@zarslaw.com

*Attorney for Plaintiffs*

[additional counsel listed below]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| WESTERN WATERSHEDS PROJECT; NATIONAL PRESS PHOTOGRAPHERS ASSOCIATION; and NATURAL RESOURCES DEFENSE COUNCIL, *Plaintiffs*, | ) ) ) ) ) ) | |
| v. | ) ) | Civil No. 15-cv-169-S |
| BRIDGET HILL, in her official capacity as Attorney General of Wyoming; TODD PARFITT, in his official capacity as Director of the Wyoming Department of Environmental Quality; PATRICK J. LEBRUN, in his official capacity as County Attorney of Fremont County, Wyoming; JOSHUA SMITH, in his official capacity as County Attorney of Lincoln County, Wyoming; and MICHAEL CROSSON, in his official capacity as County and Prosecuting Attorney of Sublette County, Wyoming, *Defendants*. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
## ATTORNEY FEES AND EXPENSES AND RESPONSE TO DEFENDANT
## CROSSON'S MOTION FOR ATTORNEY FEES

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 3

I.       The hours for which Plaintiffs seek to recover fees were reasonable and necessary .......... 3

         A.       The time Plaintiffs claim for work on the 2015 trespass laws is compensable ....... 3

         B.       Plaintiffs' work on subsections (a) and (b) was intertwined with their successful,
                  closely related challenge to subsection (c) ............................................................. 4

         C.       Plaintiffs' hours were reasonable given the length and complexity of
                  the case ..................................................................................................................... 5

II.      Plaintiffs' hourly rates are reasonable ..................................................................................... 8

III.     Plaintiffs are entitled to fees for their work on this attorney fees motion ........................... 9

IV.      The Court should deny Defendant Crosson's Cross-Motion ............................................. 10

CONCLUSION ............................................................................................................... 10

CERTIFICATE OF SERVICE ...................................................................................... 13

# TABLE OF AUTHORITIES

## Cases

*Arkla Energy Res. v. Roye Realty & Developing, Inc.*,
  9 F.3d 855 (10th Cir. 1993) ........................................................................10

*Blum v. Stenson*,
  465 U.S. 886 (1984)........................................................................................9

*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Resources*,
  532 U.S. 598 (2001)........................................................................................3

*City of Riverside v. Rivera*,
  477 U.S. 561 (1986)........................................................................................8

*Dearmore v. City of Garland*,
  237 F.R.D. 573 (N.D. Tex. 2006), *aff'd*, 519 F.3d 517 (5th Cir. 2008) ........................ 3-4

*Fairbaugh v. Life Ins. Co. of N. Am.*,
  872 F. Supp. 2d 174 (D. Conn. 2012)................................................................7

*Gavoni v. Dobbs House, Inc.*,
  164 F.3d 1071 (7th Cir. 1999) ........................................................................10

*Guzzo v. Mead*,
  No. 14-CV-200-SWS, (D. Wyo. Apr. 9, 2015) ....................................................9

*Jane L. v. Bangerter*,
  61 F.3d 1505 (10th Cir. 1995) ........................................................................5

*Hendrickson v. Branstad*,
  934 F.2d 158 (8th Cir. 1991) ........................................................................10

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)...............................................................................2, 3, 5

*Lanard Toys Ltd. v. Novelty, Inc.*,
  No. CV 05-8406-GW(JWJx), 2008 WL 11343468 (C.D. Cal. Apr. 30, 2008)...............3, 4

*Marek v. Chesny*,
  473 U.S. 1 (1985)..........................................................................................10

*Mountain Highlands, LLC v. Hendricks*,
    No. CIV 08-0239 JB/ACT, 2010 WL 1631856 (D.N.M. Apr. 2, 2010)............................7

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) ..............................................................................2, 7, 8

*Tidwell v. Fort Howard Corp.*,
    989 F.2d 406 (10th Cir. 1993) .......................................................................................5

*United States v. 27.09 Acres of Land*,
    43 F.3d 769 (2d Cir. 1994)............................................................................................9

*W. Watersheds Project v. Michael*,
    353 F. Supp. 3d 1176 (D. Wyo. 2018)...................................................................1, 2, 5

*W. Watersheds Project v. Michael*,
    869 F.3d 1189 (10th Cir. 2017) ............................................................................1, 3, 5

**Statutes**

42 U.S.C. § 1988(b) .............................................................................................................1

Wyo. Stat. § 6-3-414(c), (d)(i) (2015) ...............................................................................3

Wyo. Stat. § 6-3-414(a)-(c), (e)(i) (2016)...........................................................................3

## INTRODUCTION

For more than three years, Wyoming violated Plaintiffs' and others' First Amendment rights through the Data Censorship Laws. *See W. Watersheds Project v. Michael*, 353 F. Supp. 3d 1176, 1188 (D. Wyo. 2018). The laws threatened people with criminal and civil penalties for gathering data to support advocacy. These laws would still be in place had Plaintiffs not litigated vigorously against them. Congress decided that plaintiffs who vindicate constitutional rights should be awarded their reasonable attorney fees. *See* 42 U.S.C. § 1988(b). Because Plaintiffs' hours were necessary, and rates reasonable, the Court should grant their fee request in full.

Despite the State's protestations, the length, complexity, and expense of this case—and thus the extent of Plaintiffs' fee—was due in large part to the State's recalcitrance. Less than three months after Plaintiffs sued, this Court expressed "serious concerns and questions as to the Constitutionality" of the laws. ECF No. 40, at 38. Rather than abandon the laws, Wyoming amended them, "'proceed[ing] upstream and dam[ming] the source' of the speech" the State could not prohibit directly. *W. Watersheds Project v. Michael*, 869 F.3d 1189, 1196 (10th Cir. 2017). This Court initially agreed the revised laws avoided First Amendment review. ECF No. 64. The Tenth Circuit reversed, holding that "the statutes regulate protected speech . . . and . . . are not shielded from constitutional scrutiny merely because they touch upon access to private property." 869 F.3d at 1192. Still, Defendants resisted. Refusing a settlement overture, ECF No. 122-2, ¶ 47, they propounded extensive discovery, proffered irrelevant witnesses, *see* ECF No. 96 at 22 n.4, and insisted on in-person depositions across the country, ECF No. 122-2, ¶ 48. When summary judgment was granted three years after the case commenced, this Court rejected every one of State Defendants' main arguments, *see W. Watersheds Project*, 353 F. Supp. 3d at 1183-91, concluding that the State had "no legitimate explanation for the specific targeting of data collectors over other types of" trespassers, and "no plausible reason for the specific

1

curtailment of speech in the statutes beyond a clear attempt to punish individuals for engaging in protected speech that at least some find unpleasant," *id.* at 1191.

State Defendants now recast this long and intense case as "hardly . . . complex," ECF No. 130 at 9 ("Wyo. Opp'n"), to resist paying the fees that Plaintiffs accrued over years of vigorous lawyering (and collaboration to harmonize the separate Plaintiffs' positions so they could stay on one complaint, *see* ECF No. 122-1, ¶ 19). After enacting unconstitutional laws and defending them to the bitter end, Defendants want to avoid the bill. Congress commanded the opposite.

Defendants' assertion that Plaintiffs' fee request "shocks the conscience" should be dismissed as a distraction. Wyo. Opp'n at 4, 10. It is undisputed that Plaintiffs' counsel *spent* this time, and more. (Plaintiffs have already cut their total hours, voluntarily, by about 30%. *See* ECF No. 122 at 15-16 ("Pls. Mem.") (initial lodestars); ECF No. 122-1 to -2, -4 to -7 (timesheets showing cuts).) There is also no dispute that most of this time was spent from the appeal forward—work that secured a reversal on all issues appealed, followed by a favorable decision on remand. All the work for which Plaintiffs seek recovery involved "a common core of facts or . . . related legal theories," which makes that time recoverable. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). And Plaintiffs had every incentive to litigate efficiently rather than running up time; indeed, their time only "t[ook] off," Wyo. Opp'n at 12, as State Defendants put it, after their Amended Complaint was dismissed, when they had *no* reason to "churn" fees.

Put simply, this was a challenging case that Plaintiffs "might not have" won, "had [they] been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Plaintiffs should be compensated for their time.

**ARGUMENT**

**I.      The hours for which Plaintiffs seek to recover fees were reasonable and necessary**

**A.      The time Plaintiffs claim for work on the 2015 trespass laws is compensable**

Plaintiffs' fee request includes some time spent challenging the 2015 Data Censorship laws, although far from all the time expended. That is compensable under *Hensley*, because it "involve[s] a common core of facts" and is "based on related legal theories" as Plaintiffs' successful claims against the 2016 laws. 461 U.S. at 435; *see also, e.g.*, Pls. Mem. at 14.

The First Amendment theories on which Plaintiffs challenged the 2015 and 2016 laws were almost indistinguishable, and thus the legal and factual work done to challenge the 2015 laws directly contributed to Plaintiffs' challenge to the 2016 laws. *See Lanard Toys Ltd. v. Novelty, Inc.*, No. CV 05-8406-GW(JWJx), 2008 WL 11343468, at *2 (C.D. Cal. Apr. 30, 2008) (finding work done before complaint amendment to be compensable). The amended Data Censorship Laws still targeted the same protected speech, although they "proceed[ed] upstream." *W. Watersheds Project*, 869 F.3d at 1196; *compare* Wyo. Stat. § 6-3-414(c), (d)(i) (2015), *with id.* § 6-3-414(a)-(c), (e)(i) (2016). If Plaintiffs had not litigated over the 2015 laws, they would have needed to perform work, in 2016, similar to what they undertook in 2015. The briefs and decisions during both phases of the case reflect the overlap and common issues.

State Defendants do not dispute this, but mistakenly claim that *Buckhannon Board & Care Home v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001), disallows recovery for this time. *See* Wyo. Opp'n at 5-6. Not so. *Buckhannon* concerned only the threshold question of whether the plaintiffs were "prevailing" (i.e., entitled to any fees at all) given that they won no court-ordered relief. 532 U.S. at 605. Here, Plaintiffs obtained court-ordered relief, and Defendants concede that Plaintiffs prevailed. *Buckhannon*'s "prevailing party" test is plainly met. *See Dearmore v. City of Garland*, 237 F.R.D. 573, 576-78 (N.D. Tex.

3

2006), *aff'd*, 519 F.3d 517 (5th Cir. 2008); *cf. Lanard Toys, Ltd.*, 2008 WL 11343468, at *2.

Further, Defendants ignore that Plaintiffs cut their 2015 hours (even cutting time State

Defendants suggests may have contributed to Plaintiffs' win, *see* Wyo. Opp'n at 7 n.3). Mr.

Pidot cut more than 80 hours related to the initial phase of the case that did not concern legal

issues contested in the Amended Complaint. *See* ECF No. 122-7, ¶¶ 15-16. Similarly, Mr. Wall

cut all NRDC time on the preemption claim. *See* ECF No. 122-1, ¶ 30.a. Public Justice likewise

cut that time. ECF No. 122-2, ¶ 58.f. Then, *after these cuts*, Plaintiffs cut 10% more, across the

board. Pls. Mem. at 16. There is no justification for Defendants' request to further slash these

already-reduced hours. Wyo. Opp'n at 6-7.[1]

### B. Plaintiffs' work on subsections (a) and (b) was intertwined with their successful, closely related challenge to subsection (c)

Defendants' argument that the Court should reduce all of Plaintiffs' hours predating the

appeal by an arbitrary 50% (on top of the cuts Plaintiffs already made), because Plaintiffs

dropped their challenge to subsections (a) and (b), is similarly baseless.[2]

Plaintiffs' work on all three subsections formed an interrelated whole. Subsections (a)

and (b) concerned essentially the same conduct as subsection (c), although the former two

addressed activities exclusively on private property, while subsection (c) required people to cross

private property on the way to other (public *or* private) land. Accordingly, the complaints stated

only a single claim against all three subsections. *See, e.g.*, ECF No. 54 at 51-55 (Free Speech

claim); ECF No. 1 at 53-56 (same). In opposing Defendants' motions to dismiss, Plaintiffs

---

[1] Defendants object to "costs related to phases of the litigation where Plaintiffs should not be compensated." Wyo. Opp'n at 14. But Exhibit D lists no expenses for the first part of the case except for filing fees and pro hac vice fees, which would have been incurred regardless.

[2] When the State revised the statutes in 2016, it altered how it presented the covered conduct, dividing it between subsections (a) through (c).

4

challenged the constitutionality of the subsections collectively, presenting the same arguments against all three. *See, e.g.*, ECF No. 60 at 2, 11, 16; ECF No. 34 at 9-24. State Defendants tried to draw distinctions, but those differences did not occupy *Plaintiffs'* attention.[3]

Further, as noted above, the relevant question under *Hensley* is not whether subsections (a) and (b) were enjoined, but whether Plaintiffs' work on subsections (a), (b), and (c) "involve[d] a common core of facts or [were] based on related legal theories." 461 U.S. at 435; *accord Jane L. v. Bangerter*, 61 F.3d 1505, 1512 (10th Cir. 1995). Therefore, the Court should not try to carve out some reduction for work on subsections (a) and (b). *See also Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 412-13 (10th Cir. 1993) (noting "one bundle of proof presented on the three issues" and "significant" success).

Plaintiffs' focus on subsection (c) in their appeal does not show they "wasted" the Court's time or that the challenges to other subsections were nonjusticiable. The prohibitions imposed by subsections (a) and (b) were very important to some Plaintiffs. Those Plaintiffs ultimately declined to appeal. The appealing Plaintiffs focused on subsection (c) as most important to them, but subsections (a) and (b) *also* chilled resource data collection. Because Plaintiffs "achieve[d] success on a significant, interrelated claim," the absence of an injunction on subsections (a) and (b) "should not preclude full recovery." *Jane L.*, 61 F.3d at 1511-12.

C.   **Plaintiffs' hours were reasonable given the length and complexity of the case**

The State's indignation at Plaintiffs' hours ignores three salient features of this case:

---

[3] Defendants overstate their "success" as to subsections (a) and (b). True, this Court did not enjoin those sections, but the State would tempt fate to now enforce them: The Tenth Circuit held that Wyoming's speech restrictions "are not shielded from constitutional scrutiny merely because they touch upon access to private property," 869 F.3d at 1192; *see also W. Watersheds Project*, 353 F. Supp. 3d at 1189 n.7 (rejecting Defendants' contrary arguments). Given that subsections (a) and (b) are content-based on their face, they would have to pass strict scrutiny. As Defendants' arguments on summary judgment establish, the statutes cannot meet this test.

First, it lasted years, involving substantial discovery (mostly propounded by Defendants), and complex issues (as illustrated by this Court's reversal by the Tenth Circuit). Second, Plaintiffs are not a singular, unitary entity: they came to this litigation with separate perspectives, are separately represented, and had to work hard to harmonize their positions and approaches. While that coordination took time, it allowed them to bring a single lawsuit, rather than multiple cases, ultimately reducing the *total* hours expended. Third, Plaintiffs have already exercised billing judgment and cut their time significantly.

State Defendants lump Plaintiffs' work from successive stages of a lengthy litigation into a single number, and then characterize that total as "shock[ing]." Wyo. Opp'n at 10. There is nothing shocking about a large, difficult, complex, multi-party case taking time. Plaintiffs' counsel had to research novel challenges to unique statutes; draft a complaint and its amendment; fight two motions to dismiss; win a reversal on appeal; respond to and take discovery, before and after the appeal, including both fact and expert depositions; brief and argue summary judgment; and now litigate this fee dispute. *See* Pls. Mem. at 11-12. The number of hours spent reflects real work against a defendant who fought vigorously to uphold Wyoming's policies.

Defendants call out a few isolated time entries that they consider too high. *See* Wyo. Opp'n at 10 n.5 & 14 n.8. These entries amount to less than 2% of the total hours that Defendants demand be cut—far less than the time Plaintiffs cut already. What Defendants *really* complain of is time spent by one attorney on two days to review and revise a draft brief prepared by a different attorney who represented different clients. Perhaps this attorney could have spent less time, but her client might have found itself joining a brief with which it disagreed, or obtained less favorable results. State Defendants' identification of these few time entries proves little more than that Defendants are trying to paint a picture with a few dots.

In this manner, Defendants' reduction proposal is untethered to any proof of overbilling,

let alone overbilling that justifies draconian cuts. Even if this Court were to conclude that some entries were too high, the response would be to cut *that* time, not to cut the *entire* lodestar. Instead, Defendants appear to have decided how much they wanted to pay, and worked backwards to attempt to justify it. That is not how courts calculate fees.

State Defendants vaguely dispute Plaintiffs' time on the amended complaint and opposing the second motion to dismiss, *see* Wyo. Opp'n at 8, apparently because there had been an original complaint and a first motion to dismiss. But Plaintiffs' amended complaint and second opposition *had* to change to reflect this Court's intervening ruling, the 2016 amendments, and Defendants' evolving arguments. This phase *also* included initial, reciprocal written discovery. And the separately-represented parties had to spend time resolving strategy conflicts. *See* ECF No. 122-1, ¶¶ 19-21; *see also Moreno*, 534 F.3d at 1112-13.

As for State Defendant's new claim that this case "hardly raised complex issues," Wyo. Opp'n at 9, the Court may recall otherwise. The complexity of the issues is evident in the State's decision to amend its laws after the first motion-to-dismiss ruling, the Tenth Circuit's reversal of this Court, and State Defendants' tactics on remand. A case need not go to trial for it to involve time-consuming discovery, legal analysis, and rounds of motions practice. *See, e.g.*, *Mountain Highlands, LLC v. Hendricks*, No. CIV 08-0239 JB/ACT, 2010 WL 1631856, at *2 (D.N.M. Apr. 2, 2010); *Fairbaugh v. Life Ins. Co. of N. Am.*, 872 F. Supp. 2d 174, 190 (D. Conn. 2012).

Moreover, discovery was particularly time-consuming because of State Defendants' choices. They declined to even discuss settlement following the Tenth Circuit's decision and decided instead to serve hundreds of written discovery requests and to insist on in-person depositions that required multiple cross-country trips. Defendants' bizarre suggestion that responding to this discovery shouldn't have been burdensome because requests sent to the separate Plaintiffs were "more or less identical," *see* Wyo. Opp'n at 9, ignores that Plaintiffs are

7

separate entities, with different information, required by the Federal Rules of Civil Procedure to respond individually to Defendants' separate discovery requests.

Nor, contrary to State Defendants' insinuation, *see* Wyo. Opp'n at 12, did Plaintiffs have any reason to spend more time than needed on an unpaid case: "The payoff is too uncertain, as to both the result and the amount of the fee," to justify such waste. *Moreno*, 534 F.3d at 1112. Indeed, after this Court dismissed their amended complaint, Plaintiffs' prospects for success were sufficiently dim that several original plaintiffs were unable to continue. Plaintiffs had to work hard to turn the case around. That is reflected in the fact that nearly 80% of the time for which they seek fees was spent from the appeal forward. *See* ECF No. 122-1, ¶¶ 30-34. Plaintiffs focused their arguments on appeal, redoubled their efforts on remand—and prevailed.

State Defendants' counsel's self-serving representation that he spent less time on the case than Plaintiffs did, *see* Wyo. Opp'n at 9-10, proves little. His clients did not have to obtain reversal. His clients were not separately represented. And his clients lost. "The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986).

## II.     Plaintiffs' hourly rates are reasonable

Plaintiffs' requested rates reflect the experience and qualifications of their counsel. *See* Pls. Mem. at 8. Plaintiffs' counsel's qualifications, which Defendants do not dispute, demonstrate that they practice at the top of their field. *See, e.g.*, ECF No. 122-1 ¶¶ 6-13; ECF No. 122-2 ¶¶ 8-9, 13-19, 31; ECF No. 122-7 ¶¶ 6-12. And three pieces of evidence—the *only* evidence before this Court on this issue—indicate that Plaintiffs' proposed rates are consistent with this market, if at its upper end.

First, Mr. Moats, whom Defendants recognize is an experienced Wyoming litigator, Wyo. Opp'n at 16, and who is familiar with this case because he submitted an amicus brief on

appeal, attested to the reasonableness of Plaintiffs' rates.[4] *See* ECF No. 122-3, ¶ 7; Moats Suppl. Decl. ¶¶ 2-3 (filed concurrently with this brief). Second, survey data show that attorneys in Wyoming *do* charge the rates Plaintiffs request. State Defendants concede this, Wyo. Opp'n at 15-16, but insist without basis that Plaintiffs are entitled only to an average rate. Third, actual billing records from Wyoming firm Holland & Hart in the Jackson Hole case show that Wyoming public officials pay rates like those Plaintiffs propose here. *Cf. Blum v. Stenson*, 465 U.S. 886, 895 (1984) (hourly rates in civil rights fee-shifting case should reflect private firm rates). Indeed, the rates Plaintiffs request are similar to what the State *agreed* was reasonable in a gay marriage case four years ago. *See* Order Granting in Part Pls.' Mot. for Attys' Fees, *Guzzo v. Mead*, No. 14-CV-200-SWS, (D. Wyo. Apr. 9, 2015), ECF No. 81 (accepting rates of $300/hour for four attorneys, and well above $250/hour for others).

In response, State Defendants offer little but their own say-so. They submit no evidence that Plaintiffs' proposed rates are outside the range of the relevant Wyoming market. Plaintiffs' proposed rates are based on evidence, and were proposed for that reason.[5]

### III.   Plaintiffs are entitled to fees for their work on this attorney fees motion

Defendants err in claiming that Plaintiffs may not recover fees for time spent on their attorney-fee claim unless Plaintiffs receive more through litigation than what State Defendants offered as settlement. *See* Wyo. Opp'n at 18. Defendants' offer of judgment was invalid, if Rule 68 applies at all. Plaintiffs, who are separately represented, have separate attorney-fee claims.

---

[4] That Mr. Moats might charge private clients less may reflect a variety of irrelevant factors. For example, he may wish to cater to a less economically advantaged client base. Moats Suppl. Decl. ¶ 3.

[5] To the extent that State Defendants complain that Plaintiffs have too many senior litigators involved, they forget that Plaintiffs are not a single plaintiff; rather, they are separate and have their own separate counsel. Because of Plaintiffs' differing interests and positions, they would not and could not have had one set of counsel.

*See, e.g.*, *United States v. 27.09 Acres of Land*, 43 F.3d 769, 774 (2d Cir. 1994). Defendants had

each of Plaintiffs' counsel's timesheets, but failed to make individualized offers to each Plaintiff.

Instead, Defendants offered a lump sum to Plaintiffs, telling them to decide how to divide it up.

Wall Suppl. Decl. ¶ 11 (filed concurrently). Defendants' approach is not allowed under Rule 68,

which requires an offer to enable each Plaintiff to "independently evaluate" the "merits of [*its*]

[claim] relative to the value of the offer." *Gavoni v. Dobbs House, Inc.*, 164 F.3d 1071, 1076-77

(7th Cir. 1999); *see also Marek v. Chesny*, 473 U.S. 1, 6 (1985) (valid offer requires plaintiff to

know what it could recover under offer); *Arkla Energy Res. v. Roye Realty & Developing, Inc.*, 9

F.3d 855, 867 (10th Cir. 1993). Thus, Defendants' "offer" should not preclude an award of fees

for time spent after the invalid offer was made. If, however, the Court concludes that this issue is

unripe, Plaintiffs respectfully request the opportunity to brief this matter further.

**IV.     The Court should deny Defendant Crosson's Cross-Motion**

Defendant Michael Crosson, County and Prosecuting Attorney for Sublette County, does

not dispute Plaintiffs' entitlement to a full fee, but asks the Court to limit the award against

Sublette County by excluding work done against Defendants generally. ECF No. 129-2 at 2-3.

Plaintiffs properly sued entities capable of enforcing the Data Censorship Laws, and Sublette

County denied the claims. *See* ECF Nos. 26 & 55. Most of Plaintiffs' work lay against all

Defendants. Defendants are thus jointly and severally liable for that work.[6]

**CONCLUSION**

This Court should award $817,266 in fees, which reflects $766,972 for the merits phase,

and $50,294 for the fees litigation, *see* Wall Suppl. Decl. ¶ 10; and $21,396.24 in costs.

---

[6] *Hendrickson v. Branstad*, 934 F.2d 158 (8th Cir. 1991), is distinguishable, as here, most attorney time was spent litigating claims that lay against *all* Defendants, collectively.

10

Dated: May 23, 2019

Respectfully submitted,

*/s/ David S. Muraskin*
David S. Muraskin
Public Justice, P.C.
1620 L St. NW, Suite 630
Washington, DC 20036
(202) 861-5245
dmuraskin@publicjustice.net
*Counsel for Western Watersheds Project and
National Press Photographers Association*

Leslie A. Brueckner
Public Justice, P.C.
555 12th St., Suite 1230
Oakland, CA 94607
(510) 622-8205
lbrueckner@publicjustice.net
*Counsel for Western Watersheds Project and
National Press Photographers Association*

Justin Marceau
University of Denver Sturm College of Law
(for identification purposes only)
2255 East Evans Ave.
Denver, CO 80208
(303) 871-6000
jmarceau@law.du.edu
*Counsel for Western Watersheds Project and
National Press Photographers Association*

Deepak Gupta
Gupta Wessler PLLC
1735 20th Street, NW
Washington, DC 20009
(202) 888-1741
deepak@guptawessler.com
*Counsel for National Press Photographers
Association*

*/s/ Michael E. Wall*
Michael E. Wall
Natural Resources Defense Council
111 Sutter Street, 21st Floor
San Francisco, CA 94104
(415) 875-6100
mwall@nrdc.org
*Counsel for Natural Resources Defense Council, Inc.*

Margaret Hsieh
Natural Resources Defense Council
40 West 20th Street
New York, NY 10011
(212) 727-2700
mhsieh@nrdc.org
*Counsel for Natural Resources Defense Council, Inc.*

Reed Zars, Wyo. Bar #6-3224
Attorney at Law
910 Kearney Street
Laramie, WY 82070
(307) 760-6268
reed@zarslaw.com
*Counsel for Plaintiffs*

12

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on the 23rd day of May, 2019, I electronically filed the foregoing with the Clerk of the U.S. District Court of Wyoming using the CM/ECF system which sent a notice of electronic filing to all counsel of record.

/s/ Michael E. Wall
Michael E. Wall
Natural Resources Defense Council
111 Sutter Street, 21st Floor
San Francisco, CA 94104
(415) 875-6100
mwall@nrdc.org
Counsel for Natural Resources Defense Council